[No. 1579.  Decided April 6, 1895.]

W. B. ROBERTS *Receiver, Respondent,* v. THE WASHING-
TON NATIONAL BANK, *Appellant.*

EQUITABLE CASES—REVIEW ON APPEAL—CORPORATIONS—ACTS OF DIREC-
TORS — COMMON AGENT—VALIDITY OF TRANSACTIONS — FRAUD — EVI-
DENCE — BANKS.

Findings of fact made by the court in an equity case do not stand
upon the same footing as the verdict of a jury, under Laws 1893,
p. 130, § 21, but it is the duty of the appellate court, when proper
exceptions are taken thereto, to examine *de novo* the proofs con-
tained in the record. (*Webster v. Thorndyke, ante,* p. 390, overruled.)

A general understanding by the boards of directors of two corpor-
ations, that certain transactions are to be carried on between them
by a common agent, followed by a course of dealing in pursuance
thereof, of which each board has knowledge, is sufficient authority
for such transactions, although no resolutions granting that author-
ity are passed by the respective boards.

The fact that the boards of directors of two corporations entering into such an agreement were identical, would not render the transactions void, but merely voidable and capable of ratification.

When a course of dealing between two banking corporations has been maintained for a period of two years, knowledge of which could have been obtained from an examination of the books of either of the banks, it must be presumed that the boards of directors of such banks had knowledge of the transactions.

While actual fraud may be established by circumstantial evidence, the circumstances relied upon must be such as to reasonably consist only with the intent to defraud and be, in some degree, inconsistent with an honest intent. It cannot be presumed rom the fact alone that circumstances tending to show it have been proven.

Where two banks have entered into an agreement to carry the paper of a partnership in substantially equal proportions, the receiver of one of the banks cannot recover from the other on account of a transfer of a portion of such paper to the receiver's bank, on the ground that it had been made through a common agent.

An insolvent bank may, in consideration of the loan to it by another bank of ready money with which to meet demands upon it, transfer part of its property as security therefor, without rendering the transaction invalid as to creditors.

*Appeal from Superior Court, Spokane County.*

*Blake & Post,* for appellant.

*Turner, Graves & McKinstry,* for respondent.

The opinion of the court was delivered by

HOYT, C. J.—This action was brought by the plaintiff, W. B. Roberts, as receiver of the Washington Savings Bank, against the Washington National Bank of Spokane Falls, to recover certain property, or the value thereof, which, it was claimed, had been fraudulently obtained by the defendant from the Washington Savings Bank; and to recover the money paid by the savings bank for certain notes transferred to it by the national bank in fraud of its rights.

It was alleged that the transactions which led to the transfer of the property should be set aside and held

for naught for two reasons, first, because there was
actual fraud intended and consummated by the officers
of the defendant; and secondly, legal fraud by reason
of the relation of the officers of the two corporations
through which the business was transacted.   The busi-
ness was done through one F. E. Goodall, who assumed
to act for each of the corporations, and it was claimed
that it was beyond his power as such common agent
to do the business which culminated in the transfer of
the property.

Elaborate briefs have been filed upon the question
of the powers and duties of agents, and of the want of
power in an agent to act as such in behalf of two prin-
cipals in relation to adverse transactions between them.
These and kindred questions have been ably discussed
in the briefs of counsel and in oral argument; but, in
our opinion, the rights of the parties depend little, if
at all, upon such questions.   An inspection of the
briefs of counsel will show that, notwithstanding the
elaborate presentation of these and other questions of
law, the propositions upon which the appellant and re-
spondent radically differed were as to the facts estab-
lished by the proofs.   The authority of few, if any,
of the cases cited upon either side is disputed by the
other, and it is apparent that the application of the
principles established by such cases would have led to
little dispute if the discussion on either side had re-
lated to facts as to which the parties agreed.

The trial court made findings of fact in substantial
compliance with the claims of the plaintiff, as set out
in the complaint; and if these findings were warranted
by the proofs there would be little reason for question-
ing the correctness of its legal conclusions.   The de-
fendant excepted to all of these findings of fact and
requested the court to find substantially different upon

nearly all the propositions involved; and if such exceptions had been sustained and the facts found as requested there could be little doubt but that the legal conclusions to be drawn therefrom would have resulted in a decree for the defendant.   It follows that the substantial question which we are called upon to decide is as to whether the proofs in the record sustain the findings of the court as made or would better sustain those requested on the part of the defendant.   If the former the decree is substantially right and should be affirmed; if the latter it is wrong and should be reversed and the action dismissed.

Under the act of 1893 ( Laws, p. 130, § 21) findings of fact in an equity case and in one at law are placed upon substantially the same basis, but thereunder it is made the duty of the appellate court, when exceptions are properly taken to such findings, to examine the proofs contained in the record *de novo*.   This requirement, construed in the light of the practice of courts of equity in the determination of facts upon appeal by a trial *de novo* upon the record, compels us to hold that at least in an equity case the findings of fact do not stand upon the same footing as the verdict of a jury. On the contrary the statute can only be given force by holding that it is the duty of the appellate court to determine the facts for itself upon the proofs contained in the record.   It does not follow that the finding of the lower court will have no weight in such determination, but it does follow that it cannot have any such weight as does the verdict of a jury in a law case.   If it did, it would only be necessary for the appellate court to ascertain that there was evidence introduced upon which the fact could be found, in order that the finding should be affirmed.   And it is clear that such an investigation would not be an examination of the

proofs *de novo* in the appellate court, as required by the express terms of the statute.

What we have said as to the effect of the findings of fact under the appeal act of 1893 is to some extent inconsistent with what was said by us in the case of *Webster v. Thorndyke, ante,* p. 390, and to that extent that case is overruled. The question, though involved in that case, was not necessary to its determination, for the reason that the findings of fact were warranted by the proofs. It affirmatively appeared from the proofs that the findings were right, hence it was unnecessary to the decision to say anything as to their effect, and what was said was by way of argument, and for that reason not as fully considered as it otherwise would have been. A more thorough examination of the question has satisfied us that this holding did violence to some of the provisions of the statute, and we now feel compelled to construe it differently. The rule before announced was the more convenient one, and we had hoped to be able to sustain it, but find ourselves unable to do so.

In the case at bar all of the findings of fact were excepted to, and the record contains all of the proofs offered upon the trial in the court below. Hence, it becomes the duty of this court to find substantially as a new question the facts within the pleadings established by such proofs, and determine the rights of the parties upon the facts so found, even although the trial court upon such proofs had found them differently. In determining the facts established by the proofs the findings of the trial court should receive consideration, but cannot be allowed to control when in the opinion of this court they are contradicted by a clear preponderance of the evidence.

Before proceeding to a discussion of the disputed

facts, it will be proper to say that the undisputed proofs show that the Washington Savings Bank was in existence and doing business for some time prior to the organization of the Washington National Bank; that the scheme for the organization of said national bank originated with the stockholders and officers of the savings bank; that the stock of the national bank when organized was owned by substantially the same persons as the stock of the savings bank; that the board of directors of the national bank and the board of trustees of the savings bank were in the main, but not entirely, identical; that at the time the organization of the national bank was determined upon it was also determined to import one F. E. Goodall from the East to act as cashier of the national bank, and in a similar capacity, but under the name of treasurer, for the savings bank; that the two banks were to occupy the same banking office, the business of the national bank to be conducted on one side and that of the savings bank on the other; and that it was while the two banks were so occupying this common banking office and the business of each being managed mainly by said F. E. Goodall, that the transactions in question were had. This statement is necessary that we may properly examine one of the claims of the defendant, by which it sought to meet the case made by the plaintiff. Its contention was, and is, that at the time of the organization of the national bank there was an agreement, or such a mutual understanding among the directors of the two corporations as amounted to an agreement, that they should not only occupy a common banking room, but should also do business together through the agency of said F. E. Goodall, in the manner in which the business which it is sought to invalidate was afterwards actually transacted.

It is not seriously contended on the part of the respondent but that this proposition, if supported by the proofs, would fully meet his contention that the transactions were invalid.    There is some little contention that such an arrangement could not be made between the corporations by their respective boards of trustees, for the reason that the same persons constituted the boards of each of the banks.    But this contention has not been strongly urged, and if it had been we do not think it entitled to much consideration, for the reasons, (1) that the boards were not identical; and (2), if they were, such fact would at most make the transactions voidable only, and hence capable of ratification, which must be presumed from the circumstances disclosed by the evidence.    That it would be competent to prove such facts in aid of an allegation of actual fraud in reference to any transaction between the two corporations of which they were the common officers, is undoubtedly true, but the transaction of business between them would not by reason of such fact be conclusively fraudulent.

It is contended, however, on the part of the respondent, that the only evidence of authority to make such an agreement would be by some resolution of the proper board, and that such action could only be shown by the record of its proceedings.    There is some force in this claim, but we are not prepared to indorse that doctrine to the extent that would be necessary to sustain the contention of the respondent.    A corporation cannot escape responsibility for an act which its board of directors has expressly authorized, or which its manager has done or authorized, under such circumstances as would warrant the belief by one transacting business with the corporation that it had been duly authorized, and thereafter escape liability

on account of the act authorized or done by reason of the fact that its record fails to disclose any authority therefor. If the boards of directors of the two banks had in fact each of them passed formal resolutions and made them of record in the minutes of their proceedings, authorizing business to be transacted between them by the common agent, F. E. Goodall, such transactions through him, in pursuance of such authority, would, in our opinion, have bound each of the corporations for which he assumed to act. The general rule, to the effect that such transactions by him would be unauthorized, would be nullified by the express authority thus conferred; and in our opinion, if the passing of such resolutions by the respective boards could authorize him so to act, an understanding to that effect, followed by a course of dealing of which each of the boards had knowledge, would have the same effect.

If these conclusions are correct, there is but a single question of fact which it is necessary for us to decide upon the proofs contained in the record, and that is as to whether or not it is thereby shown that there was an understanding among the members of the boards of directors of the banks that said F. E. Goodall should transact business between them as the agent of each, or the common agent of both; and if it was, was such understanding carried into effect by a course of dealing between the two banks in pursuance thereof to the knowledge of the members of the boards of directors? If the understanding and course of dealing so existed, the claim of the respondent that these transactions were illegal cannot be sustained. The proof in reference to the understanding is not as full and complete as it might be, but substantially all the evidence upon that question went to sustain the contention of the defendant. Two or three witnesses gave

evidence which tended directly to prove that there was such an understanding between the banks, and several others testified to facts which indirectly tended to show the same fact.   The talk that was had at the time the organization of the national bank was determined upon, the importation of a man from abroad to act as the common agent, what was said in reference to the character of paper which could be handled by one bank that could not be handled by the other, all tended to support the direct testimony that there was an agreement or understanding that they should do business together in substantially the same way that the business in question was done.   We think that the existence of such an understanding or agreement was abundantly established by the proofs.

It also abundantly appears therefrom that the transactions between the banks, almost from the day of the organization of the national one, were such as would have been justified only by such an understanding or agreement.   That such was the course of dealing is not very strongly disputed by the respondent, but it is claimed by him that the boards of directors of each of the banks were not shown to have had any knowledge of this course of dealing.   It appeared from the practically undisputed proofs that this course of dealing had been continued for two years; that its existence during all of this time would have been shown by an examination of the books of either of the banks, and especially by an examination of those of the savings bank.   This being so, we think it must be presumed that the board of directors had knowledge thereof. That even a superficial examination of the books of the savings bank would have shown these transactions, is evident from the proofs, and that it was the duty of the board of directors to make at least a superficial ex-

amination many times during this period of two years
is a fact of which the court will take judicial notice,
and if they did not make it, they or those whom they
represent must stand the consequences, and not those
with whom the corporation may have had dealings.
Beside, there is some proof tending directly to show
knowledge on the part of at least a portion of the board
of directors of the savings bank of the existence of this
course of dealing between the two banks. This testi-
mony tended to show that all who were actively partici-
pating in the business of the savings bank had such
knowledge. If the other members saw fit to intrust
the management to these active members, they and the
stockholders must abide the results of their manage-
ment.

In our opinion, the course of dealing between the
two banks, duly authorized by each of them, was such
that the transactions in question did not amount to
legal fraud. Was there proof of actual fraud? We
have carefully examined the entire record and have
been unable to find anything that even remotely tends
to prove actual fraud in any of the transactions prior
to those of June 5, 1893. As to the transactions on
that day, there are some circumstances shown by the
proofs which have some tendency to show that there
was an intent on the part of the national bank, by its
agent, to overreach the savings bank. But these cir-
cumstances were not sufficient to warrant a finding of
actual fraud; for while it is true that such fraud may
be shown by circumstances, yet the court will not be
warranted in finding fraud from the fact alone that
circumstances tending to show it have been proven.
Fraud will not be presumed, and must be established
by proof either direct or circumstantial. If by the
latter, the circumstances relied upon must be such as

to reasonably consist only with the intent to defraud, and to be in some degree inconsistent with an honest intent.

The transaction upon which the larger part of the claim of the respondent was founded grew out of business with a partnership known as the Custer Mining Company. What we have said is perhaps enough to show that these transactions could not be avoided by the respondent; but it is claimed on the part of the defendant that there was another reason why these transactions should be held binding upon both the banks. It was that at the time the agreement to extend credit to the partnership was made, it was so made as well in behalf of the savings bank as in that of the national bank; that the arrangement was consented to by both banks, and was to the effect that the paper of the partnership should be carried by each of them in substantially equal proportions; that the taking of the paper by the national bank was simply a matter of convenience, and to the extent of half of it the national bank in so taking acted as the agent of the savings bank. Upon these questions the proofs are also somewhat unsatisfactory, but in view of the fact that there was some positive testimony to that effect, and other circumstances tending to establish its reasonableness, while there was not a particle either direct or indirect to the contrary, we think the fact should be held to have been established by the proofs, and that for that reason, as well as the one already stated, the savings bank could not recover on account of the Custer Mining Co. notes which were transferred to it by said national bank.

It is further suggested by the respondent that the transactions of June 5th were illegal for the reason that at that time the savings bank was insolvent. The

proofs upon the question of insolvency were such as to show that in the light of the events that afterwards developed the bank was insolvent; but they failed to show that under ordinary circumstances the assets would not have exceeded the liabilities.   For some purposes the bank was undoubtedly insolvent, but whether it was so for the purpose of construing transactions between it and its creditors may be open to question.   But it is not necessary that we should decide as to such insolvency, for the reason that, in our opinion, the transactions of that day between the two banks were supported by such consideration moving from the national bank as to make them valid, even although the savings bank was insolvent.   The savings bank was in need of ready money on that day, and to secure it transferred part of its property to the national bank.

Some other reasons have been assigned and argued by the appellant why the decree of the lower court should be reversed, but what we have said substantially determines the rights of the parties, and we shall leave the others without further consideration.

The decree will be reversed and the cause remanded, with instructions to dismiss the action.

ANDERS and GORDON, JJ.; concur.

DUNBAR and SCOTT, JJ., dissent.