[No. 4351.  Decided April 21, 1903.]

FIRST NATIONAL BANK OF PULLMAN, *Appellant,* v. CASH N. GADDIS *et al., Respondents.*

CONVERSION — UNAUTHORIZED LOAN BY BANK CASHIER — PLEADING — IMMATERIAL ALLEGATIONS.

In an action against bank officers for the conversion of funds, allegations in the complaint to the effect that the converted funds were pretended to be loaned by defendants to a speculative corporation without mercantile credit were immaterial.

SAME — EVIDENCE — MATERIALITY.

Where defendants in such an action are charged with converting money of the bank to their own use, evidence that the corporation to which they claimed the funds had been loaned was of a speculative character, without property, and unworthy of credit was properly excluded because of its immateriality.

SAME — RATIFICATION OF LOAN BY DIRECTORS.

The directors of a bank are estopped to deny the authority of the cashier and assistant cashier in the extension of credit to a speculative corporation in which the latter were stockholders, where the directors had known of the course of dealing for a period of five years without making objection thereto, and consequently the loan of the bank's money to such corporation un-

der such circumstances is insufficient to establish a conversion of the funds.

STATUTE OF FRAUDS — PROMISE TO ANSWER FOR DEBT OF ANOTHER.

The oral promise of bank officers to repay to the bank money that they have loaned out of its funds to an insolvent corporation is not binding, because a promise to answer for the debt of ananother, and not in writing.

Appeal from Superior Court, Whitman County.—Hon. STEPHEN J. CHADWICK, Judge. Affirmed.

*H. W. Canfield,* for appellant.

*Thomas Neill (V. E. Bull,* of counsel), for respondents.

The opinion of the court was delivered by

MOUNT, J.—This action was brought by appellant in the lower court to recover from respondents the sum of $445.34, alleged to have been wrongfully and unlawfully taken by respondents and converted to their own use. When the action came on for trial in the lower court, and after the plaintiff had introduced its evidence and rested, the court, upon motion of defendants, discharged the jury, and dismissed the action, upon the ground that the evidence was not sufficient to make a cause of action. From this judgment of dismissal plaintiff appeals.

It is claimed that the court erred (1) in striking out certain parts of the complaint; (2) in rejecting evidence going to show that the Kootenai County Mining & Milling Company was a speculative mining company, and unworthy of credit, and (3) in sustaining the challenge to the evidence.

1.  The two paragraphs stricken from the complaint upon motion of respondents are as follows:

"4.   That said Kootenai County Mining and Milling Company, a corporation, was a speculative corporation and had no other assets of other than speculative value; that the

capital stock of said corporation, the Kootenai County Mining and Milling Company, or any part thereof, was never paid up, and that no part thereof was ever subscribed by any *bona fide* subscription, and that the whole thereof was without any commercial value whatever, and that said corporation was not entitled to any mercantile credit whatever, all of which facts were at all times well known to each and both of said defendants."

"6.    That said defendants, after taking, appropriating and converting said moneys as aforesaid, did make a pretense of making a loan thereof to said corporation, the Kootenai County Mining and Milling Company, but that in truth and in fact said moneys were used by defendants and the same was charged on the books of the plaintiff to said corporation, the Kootenai County Mining and Milling Company, in order to conceal from the officers of plaintiff the true facts, and no loan of said moneys was made by defendants to said corporation, the Kootenai County Mining and Milling Company."

The complaint charged the defendants with unlawfully and fraudulently taking the money from the plaintiff, and converting the same to their own use. If these allegations which were stricken from the complaint are true, they are entirely immaterial, because it makes no difference to whom defendants gave the money, or for what they spent it after they took it and converted it to their own use. They would be liable for its return in any event. It was likewise immaterial whether they loaned to an insolvent or to a going corporation, or to a private person, if such loan was made for their own use and benefit, and not for the bank; and therefore allegations of this character were subject to be stricken from the complaint. If it was necessary to show that the money was converted to the use of the defendants, it is probably true that evidence showing the purpose for which the money was used was admissible to show that the defendants had converted the money to

their own use.   But the allegation that the money was converted to the use of the defendants was sufficient for that purpose.   What is said above applies equally to the evidence offered to show that the Kootenai County Mining & Milling Company was of a speculative character and was without property, and unworthy of credit.   This evidence was immaterial, especially where the defendants were charged with converting the money to their own use. It was therefore not error to exclude it.

2.   The evidence shows that the defendants were cashier and assistant cashier, respectively, of appellant, which is a banking corporation; that they were also stockholders in the Kootenai County Mining & Milling Company, and that defendant Chapman was also treasurer of the last-named corporation; that the mining company had an account with the bank, which account had been running for about five years; that the account was usually overdrawn; that, in order to balance the account for convenience of bookkeeping, Mr. Chapman, on January 16, 1900, executed a note for the mining company for the sum of $344.-75, and balanced the account with the bank by the note; that subsequently payments were made on the note, and other overdrafts were paid on account of the mining company, thus making up the amount sued for, viz., $445.34; that the directors and stockholders of the bank had frequent meetings during the time the account was running, and that the directors knew of the account and made no objection thereto; that in February, 1900, when one Mr. Coman and Mr. Stearns were negotiating the purchase of the bank, and were examining the assets thereof, they came to the note and account of the Kootenai County Mining & Milling Company, and thereupon asked defendant Gaddis concerning it, whereupon Gaddis said:   "That is a little min-

ing deal that some of us boys have. . . . That is a little matter of Per's and mine; that is a little mining deal of ours; that is a matter we owe and we will take care of it in a short time." Defendant Chapman said: "Of course, we will take it up, but we want you, in order to protect us —we may want you to sue the Kootenai County Mining & Milling Company, and foreclose upon this property. That is, take the property under suit and let us buy it in and shut out these fellows that won't pay their assessments." Defendants were not indorsers, and never in any way than as above stated agreed to pay the account. We think this evidence fails to show either a wrongful taking or a conversion of the money sued for. Even if the Kootenai County Mining & Milling Company was a speculative corporation, and was not entitled to credit in the first instance, and the cashier and assistant cashier of the bank knew that fact, even if they were not authorized to extend credit to the said mining company in the beginning, yet when the directors of the bank knew that credit had been extended, and made no objection thereto, the bank cannot, after five years' dealing with that company, hold the cashier or assistant cashier for the amount which the company may owe the bank at the end of that time. After a course of dealing for such a length of time, where the directors of the bank knew about it, the bank will be held to have ratified the credit. *Roberts v. Washington National Bank*, 11 Wash. 550 (40 Pac. 225). Nor is the oral promise to pay binding upon either of the defendants, because it is at most a promise to answer for the debt of another, which, under the statute, must be in writing. In any view of the case, we think the court did not err in taking the case from the jury. The judgment is therefore affirmed.

FULLERTON, C. J., and ANDERS and DUNBAR, JJ., concur.