[No. 16311.   Department One.   May 16, 1921.]

## WINLOCK W. MILLER, *Appellant,* v. VIRETTA C. DENNY, *Respondent.*[1]

PRINCIPAL AND SURETY (1)—CREATION OF RELATION—EVIDENCE— SUFFICIENCY.   Where plaintiff, at the solicitation of the principal stockholder in a mining corporation, entered into a guaranty contract to protect a bonding company against liability for becoming surety on the mining company's bond, there being no personal promise of such stockholder to save the guarantor harmless, the obligation was that of the mining corporation and not that of the stockholder.

FRAUDS, STATUTE OF (1)—DEBT OF ANOTHER.   The oral promise of a stockholder to reimburse a guarantor of a corporation for loss incurred by him by reason of such guaranty is void under the statute of frauds (Rem. Code, § 5289) as a promise to answer for the debt of another.

Appeal from a judgment of the superior court for King county, Frater, J., entered May 13, 1920, upon findings in favor of the defendant, in an action to recover on a surety bond.   Affirmed.

*Clarence L. Reames,* for appellant.

*D. C. Conover,* for respondent.

FULLERTON, J.—In this action the appellant, Miller, seeks to recover from the administratrix of the estate of Charles L. Denny, deceased, the sum of eleven thousand nine hundred dollars and interest, which he was compelled to pay to the surety, upon an injunction bond, whom he had guaranteed against any loss that might accrue upon the bond.   He failed of recovery in the court below, and appeals from the adverse judgment.

At some time prior to the beginning of the year 1903, the Charles L. Denny named acquired certain placer

[1]Reported in 197 Pac. 936.

mining property located on Spruce Creek, in the Atlin mining district, in the Province of British Columbia. In acquiring the properties, and in his mining operations thereon, he had, prior to the year named, expended some seventy thousand dollars. In the latter part of the year 1903, a corporation known as the Spruce Creek Power Company, Limited, was organized under the laws of British Columbia, to take over and operate the mining properties. The capital stock of the corporation was fixed at one hundred and fifty thousand shares of the par value of one dollar each. Of these shares there was issued to Charles L. Denny, or he later acquired, a controlling interest. The remainder of the shares were in the main subscribed and paid for by residents of the city of Seattle. The appellant, however, was not a subscriber for any of the stock, and otherwise had no personal interest therein.

The corporation took over the property from Denny immediately upon its incorporation, and during the years 1904 and 1905 operated the property through its regularly appointed officers and agents. During the year 1904, it became involved with adverse claimants over its water supply, and in the litigation which followed was defeated. The expense of this litigation, together with the expense of operation, practically exhausted the funds in the corporation's treasury, the report of the treasurer for the year 1905 showing a balance on November 15 of that year of four hundred fifty-seven and fifteen hundredths dollars.

The property was operated in 1906, through Charles L. Denny, he advancing the money necessary for the purpose, over and above the small balance in the treasury, from his own resources. The treasurer's report shows that the sums so advanced aggregated approximately nine thousand dollars.

On October 12, 1906, one Anton Deisler began an action in the supreme court of British Columbia against the mining company , seeking 'an injunction restraining it and its agents, employees and workmen from entering upon, working, mining or extracting gold from a certain fractional claim which he alleged to be his property, and which the mining company claimed as its own. The mining company was in possession, and in order not to be divested of its possession during the pendency of the action, gave a bond to Deisler in the sum of twenty-five thousand dollars, with the United States Fidelity & Guaranty Company as surety. This bond is dated as of January 18, 1907. The litigation resulted adversely to the mining company, and a judgment was recovered against it in the sum of nineteen thousand forty-seven and sixty-five one-hundredths dollars. This sum the surety company, in a subsequent action against it, was compelled to pay.

Before entering upon its obligation as surety as above mentioned, the United States Fidelity & Guaranty Company exacted of the mining company a guaranty against loss, and this was furnished it on June 25, 1907, in the form of a written obligation executed by the appellant and one Rolland H. Denny. After paying the judgment entered against it in the British Columbia court, the guaranty company recovered of the appellant and Rolland H. Denny, in the superior court of King county in this state, the amount it had so paid with interest. The appellant paid one-half of this judgment, and it is the sum so paid that he seeks to recover in this action.

The action was originally begun against Charles L. Denny in his lifetime. Issue was taken on the complaint by Denny by motion and demurrer. Pending

the disposition of these issues Denny died testate, naming his wife, Viretta C. Denny, as executrix of his estate. After the notice to creditors was given by the administratrix, the claim was presented to the estate and rejected. Thereafter the executrix was substituted as defendant in the original action, and the cause was heard with the result before stated.

In the amended complaint, upon which the cause was tried, it is alleged, in substance, that Charles C. Denny, during his lifetime was, and that his estate is now, the owner of practically all of the capital stock of the corporation named, and that Denny up to the time of his death was the active manager, and in the sole and exclusive control of the corporation; that by reason of the adverse decision of the British Columbia court in the litigation over the water rights, its mining claims were rendered worthless and without value; that the corporation as such thereupon abandoned the property and surrendered the same to Charles L. Denny, who from that time on assumed exclusive charge and control of the property, and operated the same thereafter at his own cost and expense and for his own use and benefit, although in the name of the corporation. It is then alleged:

"That prior to June 25th, 1907, there was commenced in the supreme court of the Province of British Columbia, an action entitled in said court 'Anton Deisler vs. The Spruce Creek Power Co., Ltd., John T. Prescott, John Marked, Arvid Anderson and Peter Boline', and said Charles L. Denny, in the name of the Spruce Creek Power Co., Ltd., but on his own behalf and in his own interest and for his own use and benefit, caused to be furnished in said proceeding and in said cause a certain obligation or bond in writing executed by the United States Fidelity & Guaranty Company of Baltimore, Md., to said Anton Deisler, and said Charles L. Denny, on his own behalf and in his own

interest, and for his own use and benefit, in the name
of said corporation as aforesaid, but in order to pro-
cure said bond as aforesaid to be executed by said
United States Fidelity & Guaranty Company of Balti-
more, Md., for his own use and benefit in the name of
said corporation, did orally request this plaintiff to
sign, execute and deliver unto said United States
Fidelity & Guaranty Company of Baltimore, Md., a
certain contract or obligation in writing, a true and
correct copy of which is hereto annexed, marked
Exhibit 'A' and made a part hereof, as fully as if
copied at length herein; and at said time and at said
place said Charles L. Denny, on his own behalf and in
his own interest, and for his own use and benefit, did
orally promise and agree to hold harmless this plaintiff
from any and all liability arising on account thereof.''

The further allegations relate to the recovery of the
judgment upon the bond of the guaranty company, its
payment of the judgment, and its recovery of a judg-
ment against the plaintiff for the amount so paid, and
the subsequent satisfaction of the judgment by the
plaintiff.

The evidence as we read it does not substantiate
these allegations. While it does show that Charles L.
Denny was one of the promoters of the corporation,
that he was, and his estate is, its principal stockholder,
and that he advanced from his own resources such
sums of money as were used in operating expenses
during the year 1906, it fails to show that the corpora-
tion abandoned the property prior to the conclusion
of the litigation Anton Deisler instituted against it, or
ever turned it over to the exclusive control of Denny.
The records of the corporation, it is true, close with
the year 1906; that is to say, the records show no meet-
ing either of the directors or of the shareholders of
the corporation subsequent to that time, although they
do show a call made by the directors for a sharehold-

ers' meeting to be held on December 3, 1907. A share-holders' meeting was held, however, on December 4, 1906. At this meeting a majority of the stock of the corporation was represented. A full board of directors, an auditor, and a secretary were then elected, none of whom was Charles L. Denny. The minutes of this meeting recite that Charles L. Denny submitted a report of the operations of the company for the year 1906; that the company's affairs were thoroughly discussed, and that the board of directors were authorized in the exercise of their judgment, either to sell the property for the best price obtainable, raise money with which to procure an ample supply of water to operate the mines, lease the same, or borrow money and operate the same during the year 1907. It is also recited that "the act of the board of directors in borrowing money from C. L. Denny for the operation of the mine in the sum of . . . . . . . . . . dollars was duly ratified."

While no direct reference is made thereto, the action instituted by Deisler. must have been one of the subjects discussed at the meeting. The action had been instituted more than two months prior thereto and the question whether the bond subsequently issued, and which gives rise to the present controversy, was a live question at that time. It was actually given in the month following the meeting, the directors elected at that meeting executing it on behalf of the corporation. The evidence does not show what disposition was finally made of the corporation's property, although it does show that the corporation was later formally dissolved. Nor does the evidence show, that at the time of the execution of the guaranty, there was any promise on the part of Charles L. Denny to save the guarantors harmless from liability thereon. It is shown

that Denny represented that the liability would be slight, but the former secretary of the corporation, who represented the corporation in the transaction, testifies that while the appellant signed the guaranty at the request of Charles L. Denny, there was no guaranty on the part of Mr. Denny that he would hold the guarantors harmless. To the same effect is the testimony of Rolland H. Denny, the other obligor upon the guaranty. It is in testimony, however, that after Deisler had obtained judgment against the corporation, and had instituted proceedings to recover over against the corporation's surety, that Charles L. Denny took an active part in an attempt to adjust the matter; going so far as to offer his own liability as a substitute for the liability of the surety; that in these negotiations he repeatedly stated to counsel representing the appellant that the liability was his own rather than that of the appellant, and that the appellant should never be called upon to pay it. It is in evidence also, that he made substantially the same statements and promises after the judgment was obtained against the appellant, giving as his reason for not immediately satisfying the judgment that his connection with the mining company had practically bankrupted him, and that he had no resources from which he could then obtain the necessary money.

From the record we think the trial court could well find, as it did in substance find, that the obligations for which the guaranty was given was the obligation of the Spruce Creek Power Company, and not the personal obligation of Charles L. Denny. This being true, the guarantor was surety for the corporation and not surety for Denny, and no implied obligation arose on Denny's part to repay to the surety the money which the surety was compelled to pay on account of the

21—115 WASH.

guaranty. In so concluding, it is not of course held that the real party in interest may not be uncovered and bound, however much he may have disguised himself with the name and the habiliments of another; it is but held that the evidence in the present record does not warrant the conclusion that the obligation for which the guarantors stood as surety was the obligation of Denny, or that he, at the time the guaranty was given as an inducement for its execution, promised or agreed to save the guarantors harmless from any liability or loss which might accrue thereby.

It remains to inquire whether the oral promise to repay the obligation made subsequent to the execution of the guaranty is binding upon the promisor. We are clear that the trial court correctly held that it was not. Since the obligation was not the obligation of Denny, but was the obligation of the Spruce Creek Power Company, it was an oral promise to answer for the debt of another and was thus within the statute of frauds. Rem. Code, § 5289. A case in point is *First Nat. Bank of Pullman v. Geddis*, 31 Wash. 596, 72 Pac 460. There the defendants, who were cashier and assistant cashier, respectively, of the bank, loaned funds of the bank to a mining corporation in which they were interested as stockholders. When the loan was called in question by the directors of the bank, the explanation was given that it was

"A little mining deal which some of us boys have . . . that is a matter we owe and we will take care of it in a short time."

It was held that this promise was not binding on the defendant, that it was at most but an oral promise to answer for the debt of another, which, under the statute, must be in writing. See, also: *Taylor v. Howard,* 70 Wash. 217, 126 Pac. 143; *Goldie-Klenert*

*Distributing Co. v. Bothwell,* 67 Wash. 264, 121 Pac.
60, Ann. Cas. 1913D 859; *Ford v. Aetna Life Ins. Co.,*
70 Wash. 29, 126 Pac. 69.

It is not to be denied that the appellant is the inno-
cent victim of the transaction.   He had no personal in-
terests to promote by the execution of the guaranty,
and he was hampered in his proofs by the unfortunate
circumstances of the death of Charles L. Denny.   The
record makes it clear also that there are others directly
interested in the corporation much more morally bound
to answer to its default than is he.   But the courts,
before they can hold the estate of Charles L. Denny to
answer, must find a legal obligation on the part of the
estate to bear the loss.   This the trial court ruled it
could not do from the evidence as presented, and we
are constrained to hold that it committed no error in
reaching its conclusion.

The judgment is affirmed. ·

Parker, C. J., Bridges, Mackintosh, and Holcomb,
JJ., concur.