IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 35206-4-III |
| | ) | |
| JENNIFER LYNN WADLOW, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | UNPUBLISHED OPINION |
| and | ) | |
| | ) | |
| ROBERT BLAINE WADLOW, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, C.J. — Jennifer Wadlow appeals from the final court commissioner's order, two orders denying revision, and "from all rulings or failures to rule merged therein." Clerks Papers (CP) at 217. The orders arise out of Ms. Wadlow's petition to modify the parties' child support order, and Robert Wadlow's petition to modify the parties' parenting plan. For the reasons discussed below, we reverse and remand the two revision orders and award Ms. Wadlow a portion of her attorney fees.

## FACTS

The Wadlows filed and finalized their dissolution action in Lincoln County, Washington, although they lived in Benton County. The final orders included a parenting plan and a child support order.

Years later, Mr. Wadlow left on Ms. Wadlow's doorstep a motion to modify the child support and a proposed parenting plan. Ms. Wadlow hired an attorney. Her attorney confirmed that Mr. Wadlow had not actually filed the petition in Lincoln County.

Later that year, Ms. Wadlow paid a filing fee in Benton County and filed her petition to modify the Lincoln County child support order. Mr. Wadlow then filed a petition to modify the parenting plan under the recently opened Benton County cause number. Ms. Wadlow responded to that petition and requested that the court commissioner require Mr. Wadlow "to pay all of [her] fees and costs in this action, based on his greater ability to pay and her need, and based upon his filing a petition [for a major modification] . . . because there is no statutory grounds factually alleged . . . ." CP at 166. She also filed a memorandum that detailed her reasons for believing that Mr. Wadlow's petition was frivolous and explicitly requested CR 11 attorney fee sanctions.

The matter proceeded to an adequate cause hearing on Mr. Wadlow's petition to modify the parenting plan. During her argument, Ms. Wadlow requested attorney fees

2

under CR 11. The court commissioner determined that Mr. Wadlow had not established grounds for a major or minor modification, but agreed that the parties needed to clarify the parenting plan to provide for beginning and ending times for vacations and holidays. The commissioner ordered the parties to mediation. The commissioner did not address Ms. Wadlow's request for attorney fees and costs.

A couple of months later, the parties agreed to precise days and times for vacations and holidays, and also on an increased amount of monthly child support payable to Ms. Wadlow. But the parties were unable to resolve a few issues, including when the increased child support payments should begin and Ms. Wadlow's request for attorney fees. The parties scheduled a hearing before the court commissioner to rule on these unresolved issues.

Ms. Wadlow asked that the increased child support be retroactive to the date she filed her petition to modify. Mr. Wadlow argued that the child support should not be retroactive. The court commissioner decided the child support should be retroactive to two months after Ms. Wadlow filed her petition.

Ms. Wadlow asked for Mr. Wadlow to pay some or all of her attorney fees related to both his unsuccessful petition to modify the parenting plan and her successful petition to modify child support. Her request for attorney fees had two bases. Her first basis was

RCW 26.09.140. That provision allows a court to award attorney fees in dissolution proceedings based on the parties' disparate financial circumstances. Her second basis was that Mr. Wadlow delayed providing necessary financial information and his delay constituted intransigence that increased her attorney fees. Mr. Wadlow countered these arguments at the hearing. Ultimately, the court commissioner decided that each party had the financial means to pay for their own attorneys and denied Ms. Wadlow's request for fees.

The parties later presented proposed orders to the court commissioner. Mr. Wadlow's proposed order stated that the commissioner had granted a minor modification of the parenting plan. Ms. Wadlow disputed this and argued that the commissioner had determined months earlier that there was no basis for a minor or a major modification. She further argued that the amended parenting plan was only a clarification. Mr. Wadlow argued that he felt the changes were substantial and, therefore, amounted to a minor modification. The commissioner compared the original plan to the amended plan and noted that specific dates and times for holiday and vacation visitations were added to the amended plan. Based on the amount of detail added, the commissioner determined that the amended parenting plan was a minor modification.

4

Ms. Wadlow filed two motions for revision of the court commissioner's decision. The first argued that the commissioner erred by setting the effective date of the amended child support order two months after she had filed her petition to modify. The second motion argued that the commissioner erred by not awarding her attorney fees. In her second motion, Ms. Wadlow conceded that she had not argued RCW 26.09.140 to the commissioner at the initial adequate cause hearing.[1] This concession was confusing for two reasons. First, she actually had requested attorney fees on that basis in her initial response to the November 29 adequate cause hearing. Second, it obfuscated the fact, set forth in her prior sentence quoted below, that she had properly raised RCW 26.09.140 to the commissioner.

The superior court issued separate written orders denying Ms. Wadlow's motions to revise. Pertaining to the motion for revision of child support, the court initially noted that its review was de novo. But the court then explained its refusal to revise the

---

[1] In the memorandum accompanying her motion to revise, Ms. Wadlow wrote:

> [RCW 26.04.140] is one basis specified in the motion for attorney fees denied January 31st, 2017. (The motion for fees on this basis (need versus ability to pay) was not before the Court at the time of the adequate cause hearing November 29th, 2016.

CP at 131.

commissioner's "discretionary decision as to the commencement date" was because the decision was not in conflict with the applicable statute. CP at 195.

Pertaining to the motion for revision of order denying attorney fees, the court misunderstood Ms. Wadlow's concession. The court thought that Ms. Wadlow conceded she had not argued RCW 26.09.140 to the commissioner and, on that basis, denied her request for attorney fees.

Ms. Wadlow timely appealed.

## ANALYSIS

Under RCW 2.24.050, the findings and orders of a court commissioner not successfully revised become the orders and findings of the superior court. "A revision denial constitutes an adoption of the commissioner's decision, and the court is not required to enter separate findings and conclusions." *In re Marriage of Williams*, 156 Wn. App. 22, 27-28, 232 P.3d 573 (2010). On appeal, this court reviews the superior court's ruling, not the commissioner's. *In re Marriage of Stewart*, 133 Wn. App. 545, 550, 137 P.3d 25 (2006).

Ms. Wadlow contends that the court commissioner and the superior court committed various errors. We address her arguments below.

A.   CONSTITUTIONAL RIGHT TO REVISE

Ms. Wadlow contends that the superior court denied her constitutional right to revision when it refused to consider her request for attorney fees under RCW 26.09.140. She combines this argument with her assertion that the trial court erred when it determined she had waived the argument.

All commissioner rulings are subject to revision by the superior court. RCW 2.24.050; WASH. CONST. art. IV, § 23. The superior court "reviews both the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner." *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). This right ensures litigants that disputed decisions are made by elected judges.

Here, the superior court mistakenly believed that Ms. Wadlow conceded she had not argued RCW 26.09.140 to the commissioner. What Ms. Wadlow actually conceded was that she had not argued RCW 26.09.140 at the initial adequate cause hearing. But Ms. Wadlow's motion to revise did not relate to the initial adequate cause hearing, it related to the second hearing. At that hearing, Ms. Wadlow referred to RCW 26.09.140, and argued that the commissioner should award her attorney fees on that basis in addition to Mr. Wadlow's intransigence. For this reason, the superior court erred in failing to address the merits of Ms. Wadlow's fee request.

7

## B. DE NOVO REVIEW OF COMMENCEMENT DATE

Ms. Wadlow argues that the trial court failed to conduct a de novo review of the effective date of the amended child support order.

As mentioned previously, the constitutional right to revision guarantees parties de novo review of a court commissioner's decision. Here, the superior court explicitly noted this right in its written order. But it seemingly contradicted itself when it explained its refusal to revise was because the court commissioner's decision was discretionary and consistent with the applicable statute. This basis for refusing to revise would dissuade litigants from exercising their constitutional right to revise a commissioner's discretionary decision. Such a basis is at odds with a litigant's constitutional right that guarantees de novo review of any decision by a commissioner. We therefore reverse the superior court's order denying motion for revision of order of child support.

## C. MINOR MODIFICATION OR CLARIFICATION AND REQUEST FOR CR 11 SANCTIONS

Ms. Wadlow contends that the court commissioner erred when she termed the amended parenting plan a minor modification rather than a clarification. Ms. Wadlow asserts that the distinction is important because if the amended parenting plan was merely a clarification, she might more likely prevail on her argument that Mr. Wadlow's petition to modify the parenting plan was frivolous and subject to CR 11 sanctions.

8

We deem it unnecessary to decide whether the amended parenting plan was a minor modification or a clarification. This is because we are unable to determine whether CR 11 sanctions are warranted on this record. Ms. Wadlow only requested CR 11 sanctions once—at the initial adequate cause hearing. She did not raise the issue again at the second or third hearing before the court commissioner or in her requests for revision. These failures have resulted in a lack of any order or findings related to her request for CR 11 sanctions. For this reason, there is nothing for us to review.

D.    ATTORNEY FEES

Ms. Wadlow requests attorney fees on appeal pursuant to RAP 18.1 and RCW 26.09.140. When such a request is made, appellate courts generally consider both parties' financial circumstances as well as the merits of the appeal. *See In re Marriage of Kim*, 179 Wn. App. 232, 256, 317 P.3d 555 (2014).

Ms. Wadlow timely filed a declaration of financial need and has therefore complied with RAP 18.1(c). The declaration, in addition to the record before us, sufficiently establishes that Ms. Wadlow has a financial need, and Mr. Wadlow has the ability to pay. Ms. Wadlow has prevailed on three-fifths of the issues she has raised. Subject to her compliance with RAP 18.1(d), we award her attorney that portion of her reasonable attorney fees.

9

No. 35206-4-III
*In re Marr. of Wadlow*

Reversed and remanded.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

Lawrence-Berrey, C.J.

I CONCUR:

Fearing, J.

No. 35206-4-III

SIDDOWAY, J. (concurring) — The trial court may understandably be surprised by our reversal of its order denying revision of the effective date of the amended child support order. After all, if the court had denied the motion summarily, we would deem it to have adopted the court commissioner's findings and conclusions, find no abuse of discretion by the commissioner, and affirm. *E.g., In re Marriage of Williams*, 156 Wn. App. 22, 27-28, 232 P.3d 573 (2010). I write separately to explain why, based on the history of the unique standard applied to motions for revision of superior court commissioner decisions, I reluctantly agree with my colleagues that the trial court's explanation for its order is problematic.

Article IV, section 23 of the Washington Constitution provides for the appointment of superior court commissioners "who shall have authority to perform like duties as a judge of the superior court at chambers, subject to revision[s] by such judge . . . ." RCW 2.24.050 governs the revision process, creating a 10 day period within which a demand for revision can be made and providing that "[s]uch revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner."

In a 1996 law review article about revision of rulings by superior court commissioners, Retired Judge Richard D. Hicks discussed four rules, arising out of four cases, that he found "distinctly incongruent" with the intent behind article IV, section 23.

Richard D. Hicks, *The Power, Removal, and Revision of Superior Court Commissioners*, 32 Gonz. L. Rev. 1 (1996-97). One is the rule that review of a superior court commissioner's decision is "de novo on the record," which he characterized as a misinterpretation of then-existing case law—a misinterpretation that he argues was first announced by this court in *In re Welfare of Smith*, 8 Wn. App. 285, 288, 505 P.2d 1295 (1973).

Judge Hicks's argument why *Smith* was in error begins with the first Washington decision dealing with the principles of revision, handed down in *State ex rel. Biddinger v. Griffiths*, 137 Wash. 448, 242 P. 969 (1926). "The *Biddinger* court . . . interpreted 'revision' to be the equivalent of 'review.'" *In re Marriage of Moody*, 137 Wn.2d 979, 992, 976 P.2d 1240 (1999) (citing *Biddinger*, 137 Wash. at 451). "In so holding, [the Supreme Court] required the trial court judge to 'undertake an appellate court review of the certified record'" and "'held the superior court to the same standards of review to which it held itself under the statutes then currently in effect.'" *Id.* (quoting Hicks, *supra*, at 23 (emphasis omitted)).

As Judge Hicks explains, at the time the Washington Constitution was adopted in 1889, "higher courts did *not* review lower court's factual findings *de novo* on the record." Hicks, *supra*, at 20. Rather, the higher court would not reverse the lower court if there was substantial evidence supporting the lower court. *Id.* In 1893, the legislature changed the higher court's standard of review, adopting a statute providing that a lower court's

2

factual findings should be reviewed de novo on the record. *Id.* at 21. Under this standard, "the supreme court could freely substitute its judgment for that of the trial court on factual issues if supported by a preponderance of the evidence." *Id.* (citing *Fischler v. Nicklin*, 51 Wn.2d 518, 524, 319 P.2d 1098 (1958)).

In 1951, the statute providing for the de novo standard "was first abrogated by the court itself under the rule-making power . . . and thereafter was expressly repealed by the legislature." *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959). The Washington Supreme Court resumed reviewing factual findings of lower courts by the same substantial evidence test that was in effect at the time the constitution was adopted. Hicks, *supra*, at 21. Judge Hicks concluded that under the reasoning of *Biddinger*, the substantial evidence standard that now served as the standard for Supreme Court review (and had served as the standard for all but the anomalous 1893-1951 period) should also be the standard for revision of a court commissioner's decision. It is a position he contends finds direct support in the Supreme Court's *Thorndike* decision.

*Thorndike* described a trial under review in which "[t]he evidence was sharply in conflict" and error had been assigned "upon the hypothesis that this court will try *de novo* disputes of fact tried to the court below if all the evidence is certified here." *Thorndike*, 54 Wn.2d at 572. "[T]his hypothesis would have been true from 1893 until 1951," the court explained, "but was not true prior to 1893 nor has it been true since 1951." *Id.*

3

In *Smith*, this court focused on the standard for Supreme Court review in 1926, when *Biddinger* was decided, and held that because the standard at the time was "de novo on the record," then that is the standard that must be applied to revision of superior court commissioner decisions. 8 Wn. App. at 288. Judge Hicks called this "clearly . . . erroneous." Hicks, *supra*, at 25. He argued, persuasively, that given *Biddenger*'s holding that "review" and "revision" were intended to be equivalent, the standard of *review*—which was now substantial evidence—should be the standard for revision. Yet he acknowledged that at the time he was writing, five later cases had already relied on *Smith*. *Id.* at 26.

At this point, the "de novo on the record" standard for Supreme Court review that existed from 1893 to 1951 is firmly established as the standard for revision, even if the application of that standard was arrived at through flawed reasoning. In *State v. Ramer*, 151 Wn.2d 106, 113, 86 P.3d 132 (2004), the Supreme Court reiterated that, "[o]n revision, the superior court reviews both the commissioner's findings of fact and conclusions of law de novo based upon the evidence and issues presented to the commissioner." In a footnote, it disapproved of contrary language in this court's opinion in *State v. Lown*, 116 Wn. App. 402, 66 P.3d 660 (2003), which had held that a court commissioner's findings of fact were reviewed for substantial evidence.

Under the "de novo on the record" standard of appellate review in effect for the Supreme Court from 1893 to 1951, it was the duty of the appellate court "'to find

4

substantially, *as a new question* the facts within the pleadings established by such proofs, and determine the right of the parties upon the facts so found, even although the trial court, upon such proofs, had found them differently.'" *Thorndike*, 54 Wn.2d at 574 (quoting *Roberts v. Wash. Nat'l Bank*, 11 Wash. 550, 554, 40 P. 225 (1895)) (emphasis added). Given this historical source of the revision standard, I agree with my colleagues that a superior court cannot decide a revision motion by reviewing a court commissioner's discretionary decision for abuse of discretion. I find it irrational to reverse such a decision when we would affirm the trial court if it had denied the revision motion summarily.[1] But I agree with my brothers that there is a precedential basis for the distinction.

_____
Siddoway, J.

---

[1] Consistent with the concept that a motion for revision requires the superior court to find the facts "as a new question," our Supreme Court in 1985 disapproved of superior courts that merely adopted a court commissioner's findings:

> The record indicates that the Superior Court simply adopted the commissioner's findings of fact and conclusions of law as its own. We believe that the superior courts, in reviewing decisions of court commissioners pursuant to RCW 2.24.050, should enter their own findings of fact and conclusions of law into the record. *See In re Welfare of Smith*, 8 Wn. App. 285, 505 P.2d 1295 (1973).

*In re Estate of Larson*, 103 Wn.2d 517, 520 n.1, 694 P.2d 1051 (1985). Further illustrating the inconsistency in Washington courts' treatment of revision, *Larson*'s holding was characterized as "misplace[d]" in *In re Dependency of B.S.S.*, 56 Wn. App. 169, 170-71, 782 P.2d 1100 (1989). It is now the norm to treat unexplained revision decisions as having adopted the findings and conclusions of the court commissioner.

5