[No. 334. Decided February 23, 1892.]

WILLARD GRAVES, *Respondent*, v. THE L. H. GRIFFITH REALTY AND BANKING COMPANY, *Appellant*.

APPEAL—WEIGHT OF TESTIMONY.

An appellate court will not, in a law case, usurp the functions of a jury, or of a judge acting in the capacity of a jury, and rev rse the judgment because the weight of testimony seems to be on the other side, or because, in a case of conflict of testimony, the jury believed the testimony of witnesses that the appellate court does not believe.

*Appeal from Superior Court, King County.*

Action by Willard Graves against the L. H. Griffith Realty and Banking Company, to recover commissions for the sale of real estate. Judgment for plaintiff, and defendant appeals.

*Wiley, Hale & Scott*, for appellant.

*Thompson, Edsen & Humphries*, for respondent.

The opinion of the court was delivered by

DUNBAR, J.—The plaintiff in this case alleges that he was employed by the defendant (a corporation known as the L. H. Griffith Realty and Banking Company), to sell certain real estate in Seattle, known as the Governor Semple property; "that defendant agreed with the plaintiff that in case the plaintiff should sell said property for $3,500, $500 of which was to be paid cash, and $600 each year for five

years at 8 per cent. interest, with a mortgage to secure the deferred payments, that it would pay to the plaintiff the sum of $200 cash as a commission for his services in finding a purchaser for said property and negotiating a sale therefor;" and that in consideration of said agreement the plaintiff found a purchaser who was ready and willing to comply with the terms of sale and take said property, and offered to pay to defendant the sum of five hundred dollars, and to execute his promissory notes secured by mortgage, etc., and in every respect offered to comply with the terms of the purchase; but the defendant refused to carry out the terms of the contract, refused to sell the said property to the purchaser, and abandoned the contract and refused to pay the plaintiff the said two hundred dollars which it agreed to pay for the services rendered, to plaintiff's damage in the sum of two hundred dollars, etc.    The answer alleges that the agreement between the plaintiff and defendant was, that if Governor Semple, the owner of said property, would agree to sell the same, and plaintiff could find a purchaser for the property, ready and willing to buy the same and comply with the terms of the sale as stated above, the plaintiff should receive the sum of two hundred dollars commission, provided Governor Semple would agree to receive for the land the consideration of $3,300; and that the plaintiff knew at the time the contract was entered into that it all depended upon the consent of the owner, which had not yet been obtained; and that the owner being applied to refused to sell said land, and that by the terms of the contract plaintiff was therefore not entitled to any commission or other compensation.    This is denied by the reply which alleges that the defendant at the time of making the agreement, informed plaintiff that it had already made arrangements with Governor Semple by which said Semple had agreed to sell said property, and that defendant had full power to close up said sale.    Upon the issues thus made

the parties went to trial;' the case was tried by the judge without the intervention of a jury, and judgment was given to plaintiff for the amount asked for.

The main contention here is, that the evidence does not support the findings. An appellate court in a law case will not usurp the functions of a jury, or of a judge acting in the capacity of a jury, and reverse the judgment because the weight of testimony seems to be on the other side, or because, in a case of conflict of testimony, the jury believed the testimony of witnesses that it does not believe. This doctrine is so elementary and so universally pronounced by the courts that it would be idle to enlarge on it or to discuss it further. It is sufficient to say that the jury is the judge of the facts. If the testimony on which the judgment is based is competent, and is legally introduced, and if conceded to be true would sustain the judgment, the appellate court will not inquire further as to its sufficiency. The question to be answered here is, Was there such testimony introduced in behalf of the plaintiff in this case? We think there was. The point in controversy was, whether the duties devolving upon the agent uuder the agreement had been complied with when the purchaser was found who was ready and willing to buy the land upon the terms proposed, or whether his compensation depended upon this service and the further contingency of the consent of the owner of the land to sell. This, of course, would depend upon the understanding of the parties at the time the agreement was entered into; and their understanding can be gathered, primarily, from what was said at the time of the agreement, and secondly, by their actions with reference to the agreement afterwards. Mr. Ross, who, acting for defendant, made the contract with plaintiff, swears positively that the understanding was, and that he told plaintiff in so many words, that he would get the property for sale if he could; and'in case he did, and plaintiff could

obtain a purchaser for it, he, the plaintiff, could have as a commission all that he could make over three thousand three hundred dollars; while the testimony of the plaintiff is equally positive that there were no conditions or contingencies, but that the express contract was, that if plaintiff could procure a purchaser for the property for the sum of three thousand five hundred dollars, that defendant would pay him the sum of two hundred dollars; that he thought the defendant had the property for sale. The following extract embodies the essential part of his testimony on this point:

"I found Mr. Burritt, and I asked him if he wanted to get a snap on easy payments, and I could take the property and turn it over and make him some money. He looked it over, and he says: 'Yes, I will take it at that rate.' I took Mr. Burritt, on the 19th day of August, 1890, into the L. H. Griffith Realty & Banking Company's office, and introduced him to Mr. Ross, and he says, 'All right.' Mr. Burritt goes out and goes to the bank to get the money; but when Mr. Burritt was gone to the bank, Mr. Ross says: 'That man has got a lot of money;' he says, 'He is pretty well fixed;' he says, 'I think I have got a snap for him that he can make some money out of.' Well, Mr. Burritt came back and he says, 'I can't deliver that property.' That is the first time I knew anything about it. He says, 'I have got to write to Gov. Semple; I will write to him right away; I guess it will be all right.' That is the first time I knew he could not deliver the property. I had been working there nine or ten days on it."

There is also a flat contradiction between the testimony of Burritt and Ross. Mr. Burritt, after relating his talk with Graves, the plaintiff herein, testifies as follows:

"So I and Mr. Graves went in and talked with Mr. Ross. I asked him if he had the property for sale, and he said he had. He stated the terms just as Mr. Graves did. Says I, 'I will take the property; I have got to go and draw the money to make the first payment; while I am gone you may make out the papers.' I told him,

'While I am gone for the money, make out the papers.' He was to make out the papers, understand, himself. I said, 'I will go and get the money and make the first payment and then give you mortgages just as you ask for.' He says, 'All right; I will make out the papers while you are gone.' I says, 'I won't be gone but a little while,' and when I came back in he says, 'I don't know whether I can deliver this property just now or not; I think you will have to wait until to-morrow; I have got to telegraph to Governor Semple and find out about it.' 'Well,' says I. I had the money in my hands," etc., etc.

The witness then testified that he called several times after, at the request of Mr. Ross, but was always informed by Ross that he had not yet heard from the governor; and finally after a long time the matter was dropped. While Mr. Ross testifies that when Mr. Burritt called he informed him that Semple would not sell the property; that he read him Semple's letter to that effect; that there was no talk about making out any papers, and that Mr. Burritt did not go out of the office and come back again; that he did not bring any money into the office, nor state that he would get any, and that he never called at the bank again for any purpose. Mr. Burritt testified in rebuttal that Mr. Ross did not read to him a letter or any part of a letter from Governor Semple. The testimony of the other witnesses in the case does not seem to be material. So that it can plainly be seen that this is a case of irreconcilable conflict of testimony, and a case peculiarly appropriate for the exercise of judgment by judge or jury who had an opportunity of seeing and hearing the witnesses and of judging of the truth of their statements by their appearance on the witness stand, and their manner of testifying.

The judgment will be affirmed.

ANDERS, C. J., and HOYT, STILES and SCOTT, JJ., concur.