[No. 34820. Department Two. August 20, 1959.]

DAVID A. THORNDIKE et al., *Respondents*, v. HESPERIAN ORCHARDS, INC., *Appellant*.[1]

*Earl W. Foster*, for appellant.

*O'Connor and O'Connor*, for respondents.

FOSTER, J.—Appellant, defendant below, appeals from a judgment against it for a sum found to be due under the terms of a written contract.

On a contract for the packing and sale of their apple crop, respondents, plaintiffs below, sued for the difference between the contract price and the amount paid by appellant to the respondents, which difference the court found to be $10,271.73.

Respondents are orchardists near Oroville, Washington, and grow Golden Delicious apples. Appellant's business is to market such fruit. By written contract, the appellant agreed to pack and sell the respondents' apples. It also agreed to operate two pools for the marketing of such apples, one at the plant owned by the respondents in Oroville, and the other at its Tu Rivers packing house at Olds Station near Wenatchee, Washington. The pools were to

[1] Reported 343 P. (2d) 183.

be composed of similar apples produced by other orchardists, and the appellant agreed to pay respondents the average pool price.

The Golden Delicious variety was extra fancy, specially packaged, and commanded a premium price. The appellant admitted the contract, and, in its answer, pleaded as an affirmative defense that the respondents had breached the contract and that, by a subsequent agreement, because the respondents' apples were substandard, the parties agreed to withdraw the respondents' apples from the pool and to market them separately, in consequence of which they sold at a reduced figure.

There was no pretrial order. The trial took seven days, and all of the evidence was brought here in a statement of facts containing more than 728 pages. The contract being admitted and the quantity of fruit delivered by the respondents to the appellant under the contract being admitted, the issue for trial was the affirmative defenses, upon which the appellant had the burden of proof.

The court found that the appellant had not sustained this burden and resolved all of the facts against the appellant. The court specifically found that the contract required:

" 'That the fruit covered by this contract shall be pooled and sold with fruit of like grades and varieties of other growers having similar contracts with Hesperian; that it shall be settled at the average pool price; that an accounting for the pool will be an accounting for each grower's fruit in said pool.

" 'Hesperian Orchards, Inc., will operate one Golden Delicious Pool which will include two plants, D. A. Thorndike & Sons at Oroville, and the Tu Rivers Packing Company at Olds Station, Washington.' "

The court found that " . . . The packing of Plaintiffs' fruit was actually done under the exclusive charge and supervision of the Defendant and its agents, . . ." The appellant claimed that the contract was modified by the respondents' employee, Lynn Goodman, who died before all but a small quantity of the season's crop was shipped. The court found that Goodman had no authority to bind the

respondents to a modification of the contract and that he had not been held out to have such authority. . . . :

In a carefully prepared memorandum opinion, the trial court said:

". . . . the Court is not at all convinced that sufficient evidence was presented in this case to show that Mr. Goodman had or was held out as having authority from the plaintiffs to authorize him to agree to change such an important provision of the 'Marketing Contract' . . . . namely, the inclusion of all fruit in one common pool. This is especially true, in the Court's opinion, in view of the fact that one or more of the plaintiffs was always available with whom the defendant could have discussed this very important contractual matter."

With respect to the quality of the apples, the trial court in its memorandum opinion said:

". . . that this matter was not the primary responsibility of the plaintiffs herein, but was on the other hand, according to the contractual agreement entered into, the responsibility of the defendant herein. The Court would refer the parties hereto to the 'Memorandum of Agreement' . . . and paragraph 2 therein under 'General', which reads 'HESPERIAN ORCHARDS INC. will have the *exclusive charge and supervision* of packing, marketing and shipping Golden Delicious Apples from the pool.' (Emphasis mine.) In this connection the Court also has in mind the testimony of the defendant's supervisor, Margaret Nelson, who testified on cross examination that she was never informed of the above 'exclusive' contractual provision."

Four of the six assignments of error are to the findings of fact, and the other two assignments of error are to the failure to make requested findings of fact.

The evidence was sharply in conflict. Actually, all of the claimed errors proceed upon the hypothesis that this court will try *de novo* disputes of fact tried to the court below if all of the evidence is certified here. Assuming the constitutionality of the Laws of 1893, chapter 61, § 21, p. 130, a question which we need not decide, this hypothesis would have been true from 1893 until 1951, but was not true prior to 1893 nor has it been true since 1951.

RCW 4.44.060 controls. It provides in part as follows:

"... The finding of the court upon the facts shall be deemed a verdict, and may be set aside in the same manner and for the same reason as far as applicable, and a new trial granted."

This is a territorial statute first appearing in the Laws of 1869, chapter 17, § 251, p. 60.

In construing this statute, the court said in *Reynolds v. Dexter Horton & Co.*, 2 Wash. 185, 26 Pac. 221:

"... Unless the finding was so clearly unfounded as that it should have been set aside had it been made by a jury, we should not disturb it. It stands as a special verdict, and must be so treated. ..."

In *Graves v. L. H. Griffith Realty & Banking Co.*, 3 Wash. 742, 29 Pac. 344, the court explained the effect of the section in these words:

"The main contention here is, that the evidence does not support the findings. An appellate court in a law case will not usurp the functions of a jury, or of a judge acting in the capacity of a jury, and reverse the judgment because the weight of testimony seems to be on the other side, or because, in a case of conflict of testimony, the jury believed the testimony of witnesses that it does not believe. This doctrine is so elementary and so universally pronounced by the courts that it would be idle to enlarge on it or to discuss it further. It is sufficient to say that the jury is the judge of the facts. If the testimony on which the judgment is based is competent, and is legally introduced, and if conceded to be true would sustain the judgment, the appellate court will not inquire further as to its sufficiency. ..."

But all of this was changed by the appeal act of 1893 (Laws of 1893, chapter 61, p. 119) which required a retrial of factual disputes in all nonjury cases if the evidence was brought up.

Section 21 of that act, so far as material, is:

"... and in actions legal or equitable, tried by the court below without a jury, wherein a statement of facts or bill of exceptions shall have been certified, the evidence of facts shown by such bill of exceptions or statement of facts shall be examined by the supreme court *de novo*, so far as the findings of fact or a refusal to make findings based thereon shall have been excepted to, and the cause shall be

determined by the record on appeal, including such exceptions or statement." Laws of 1893, chapter 61, § 21, p. 130.[2]

In *Roberts v. Washington Nat. Bank*, 11 Wash. 550, 40 Pac. 225, that statute was construed and the court's conclusions announced in the following words:

"Under the act of 1893 (Laws, p. 130, § 21) findings of fact in an equity case and in one at law are placed upon substantially the same basis, but thereunder it is made the duty of the appellate court, when exceptions are properly taken to such findings, to examine the proofs contained in the record *de novo*. . . .

"In the case at bar all of the findings of fact were excepted to, and the record contains all of the proofs offered upon the trial in the court below. Hence, it becomes the duty of this court to find substantially as a new question the facts within the pleadings established by such proofs, and determine the rights of the parties upon the facts so found, even although the trial court upon such proofs had found them differently. In determining the facts established by the proofs the findings of the trial court should receive consideration, but cannot be allowed to control when in the opinion of this court they are contradicted by a clear preponderance of the evidence."

In explaining the quoted provisions of the appeal act of 1893, the court said in *Tilden v. Gordon & Co.*, 34 Wash. 92, 74 Pac. 1016:

---

[2]While the question was never raised here during the life of the statute, nevertheless, it is of historical interest to note that a similar statute in Wisconsin was held to be unconstitutional in *Klein v. Valerius*, 87 Wis. 54, 57 N. W. 1112, upon the hypothesis that the appellate jurisdiction of the supreme court of Wisconsin was granted by the constitution and that it was beyond the province of the legislature to contract or enlarge it. We said in *North Bend Stage Line v. Department of Public Works*, 170 Wash. 217, 16 P. (2d) 206:

"Reading the whole of the above quoted provisions of article IV of the constitution, we are led to the conclusion that this is, at all events, the constitutional limit of the appellate jurisdiction of this court, which the legislature does not have the power either to expand or limit . . . ."

Dean John H. Wigmore declared in 23 Ill. L. Rev. 276, 278:

"The truth is that *the legislature has no more constitutional business to dictate the procedure of the judiciary than the judiciary has to dictate the procedure of the legislature.*"

See, also, *Kolkman v. The People*, 89 Colo. 8, 300 Pac. 575.

" . . . This means that this court shall try *de novo* all questions of fact, where the evidence has been preserved and the trial court's findings have been excepted to. . . . "

But that statute no longer exists. It was first abrogated by the court itself under the rule-making power, *Fischler v. Nicklin*, 51 Wn. (2d) 518, 319 P. (2d) 1098, and thereafter was expressly repealed by the legislature. Laws of 1957, chapter 7, § 10(27), p. 25, 26.

The conclusion of appellant's reply brief begins with the statement that "This is plainly a factual appeal."

■ The findings are amply sustained by the proofs. If we were of the opinion that the trial court should have resolved the factual dispute the other way, the constitution does not authorize this court to substitute its findings for that of the trial court. The judgment must be affirmed. *Wise v. Farden,* 53 Wn. (2d) 162, 332 P. (2d) 454; *Hinz v. Lieser,* 52 Wn.(2d) 205, 324 P. (2d) 829; *Kuyath v. Anderson Constr. Co.,* 52 Wn. (2d) 174, 324 P. (2d) 264; *Hendricks v. Dahlgren,* 52 Wn. (2d) 108, 323 P. (2d) 658; *Gilliland v. Mount Vernon Hotel Co.,* 51 Wn. (2d) 712, 321 P. (2d) 558; *Fischler v. Nicklin,* 51 Wn. (2d) 518, 319 P. (2d) 1098; *Bremerton School Dist. 100-C v. Hibbard,* 51 Wn. (2d) 226, 317 P. (2d) 517; *Fancher v. Landreth,* 51 Wn. (2d) 297, 317 P. (2d) 1066; and *Croton Chemical Corp. v. Birkenwald,* 50 Wn. (2d) 684, 314 P. (2d) 622.

WEAVER, C. J., HILL, FINLEY, and ROSELLINI, JJ., concur.