[No. 35515.   Department One.   Februray 1, 1962.]

HAROLD S. COX et al., *Respondents*, v. CARL A. FUNK et al., *Appellants.**

*William D. Aiken,* for appellants.

*Roger K. Garrison* (of *Boose & Garrison*), for respondents.

WEAVER, J.—Plaintiff, a farmer, commenced this action, alleging he sold defendants, dealers in produce, a portion of his 1958 potato crop; that $8,000 of the purchase price has been paid; that he owes defendants certain advanced expenses; that defendants still owe him $6,698.28, the balance of the agreed purchase price.

Defendants denied the purchase. They pleaded that they

* Reported in 368 P. (2d) 694.

acted only as *brokers*, who were to receive a commission of 15 cents for every bag of potatoes they handled and actually delivered to purchasers. At the trial, they urged, in the alternative, (a) that there was no sale unless delivery to an ultimate purchaser was made or (b) that there was a breach of warranty. Neither of the alternative theories was pleaded.

The trial court rejected defendants' theories of the transactions, accepted plaintiff's, and awarded a money judgment of $6,698.28. Defendants appeal.

Plaintiff raised, harvested, washed, graded, sacked, and loaded his potatoes in railroad cars on a siding on his farm; several deliveries were made by freight truck. Prior to loading, the potatoes were inspected by state and federal inspectors.

During harvest, plaintiff was in daily communication with defendants by mobile telephone. Plaintiff testified that the potatoes were sold as they were loaded, after telephone conference, on a "day to day market."

The trial court found

". . . said potatoes were sold and delivered by the plaintiffs to the defendants F.O.B. freight cars and/or freight trucks, plaintiffs' premises.

". . .

"The Court finds that the defendants purchased the potatoes absolutely and outright as cash buyers and not as commission merchants, factors or brokers."

The undisputed evidence reveals the following:

The potatoes were delivered to defendants for an agreed, daily-quoted market price. Most of the bills of lading for the cars of potatoes designated defendants as both consignor and consignee. Plaintiff had nothing to do with the freight charges. Defendants had exclusive control of the potatoes after shipment, with power to sell, determine destination, and fix the sale price. There is no evidence of an agreement to return the potatoes if they were not sold by defendants. The principal defendant testified that in the event the potatoes were destroyed in transit, the loss would fall on defendants, and that, if the "potatoes

would not deliver because of a price break," the loss was also defendants'.

Inherent in the trial court's determination that the transactions were completed sales, f.o.b. freight cars at plaintiff's farm (which the record supports), is a repudiation of defendants' theories that the transactions were subject to an express condition that "the potatoes would not break down during shipment due to any inherent defects in the potatoes" before delivery to the ultimate purchaser.

■ If defendants are to prevail on the theory of an alleged breach of warranty, the burden of proof is upon them. *Mills v. Meyer*, 40 Wn. (2d) 369, 243 P. (2d) 491 (1952); *Morse v. McGrady*, 49 Wn. (2d) 505, 304 P. (2d) 691 (1956).

We do not deem it necessary to discuss the existence or breach of an express or implied warranty of fitness, for the record supports the trial court's observation that

". . . there appears to be a complete lack of evidence of the breach of any warranty of fitness regardless of how broad the warranty is alleged to be. . . ."

■ There is substantial, credible evidence in the record to support the findings of fact and conclusions of the trial court that the daily transactions constituted executed sales. We cannot disturb the findings of fact. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959).

Finally, defendants assign error to the trial court's refusal to admit defendants' exhibit No. 5 in evidence.

The exhibit is a file from defendants' office. It includes correspondence, copies of telegrams, pencil notations, inspection certificates, bills of lading, and diversion orders —all, allegedly, appertain to the potatoes shipped from plaintiff's farm.

In the trial court, defendants urged its admissibility by reason of the Uniform Business Records as Evidence Act. RCW 5.45.010, *et seq.* Defendants have abandoned this argument on appeal; we need not consider it. They now urge:

"The admission of plaintiffs' exhibit No. 3 which was a compilation taken from defendants' exhibit No. 5 would require the admission of defendants' exhibit No. 5."

We find no merit in this contention.

■ Exhibit No. 3 is a memorandum prepared by plaintiff ("a combination of records off of my day to day scratch book and off of what they gave me at the time of the proposed settlement.") used by him while testifying to dates of shipment, types of potatoes, car numbers, net weights, and price. On cross-examination of plaintiff, it was offered in evidence by *defendants* and mislabeled plaintiff's exhibit. Its admission in nowise lays a foundation for or requires the admission of defendants' exhibit No. 5.

Further, the trial judge said in his written memorandum opinion:

"Even assuming arguendo that the whole of Defendants' Identification 5 were admissible, it would not change the complexion of the case . . ."

The judgment is affirmed.

FINLEY, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.