[No. 37021. Department One. February 6, 1964.]

JANSEN AGENCY, INC., *Respondent*, v. RICHARD A. WINKEL, *as Executor, Appellant.**

*Reported in 388 P. (2d) 920.

*Joseph A. Simpson,* for appellant.

HUNTER, J.—Jane Sullivan entered into a real estate broker's contract with the Jansen Agency, Inc., at Newport, Washington, for the exclusive listing of certain real property. The property was an asset of the estate of Roger Sullivan, the deceased husband of Jane Sullivan, administratrix of his estate. The Jansen Agency knew of the death of Roger Sullivan, but did not know the estate was being probated and that Jane Sullivan was the administratrix. A part of the contract provided:

" . . . This agreement expires at midnight on Dec. 1, 1961. . . . THIS LISTING IS AN EXCLUSIVE LISTING and you hereby are granted the absolute, sole and exclusive right to sell or exchange the said described property. In the event of any sale, by me or any other person, exchange or conveyance, or said property, or any part thereof, during the term of your employment, or in case I withdraw the authority hereby given prior to said expiration date, I agree to pay you the said commission just the same as if a sale had actually been consummated by you. . . .

"Accepted: 8/3, 1961.

"Al Jansen, Broker          JANE SULLIVAN (SEAL)"

The contract provided that the commission was to be 5 per cent of the sale price.

Jane Sullivan, as administratrix of the estate, sold the property within the period of the listing for $12,000. The Jansen Agency, plaintiff (respondent), brought this action against Jane Sullivan, individually, for payment of its commission. Prior to the trial, Jane Sullivan died and Richard A. Winkel, the executor of her estate, was substituted as the defendant (appellant) in the case. At the conclusion of a nonjury trial, the court awarded judgment to the plaintiff for its commission in the sum of $600. The defendant appeals.

The defendant contends that Jane Sullivan, as administratrix or as owner of the premises, was without authority to enter into the listing agreement with the plaintiff, and

the plaintiff knew this or with the exercise of reasonable prudence should have known it. In answering this contention in his memorandum decision, the trial judge stated the following, with which we agree:

"I do not believe that it is material in this case as to whether or not Jane Sullivan owned the property referred to in the listing agreement. Neither is it material as to whether she had the authority to sign the listing as owner although the listing agreement did also show that the owner was Roger Sullivan, deceased, husband of the Defendant.

"The questions before the Court are: (1) Did she agree to pay the commission provided for in the listing; (2) Was it a valid contract; and (3) Was the contract complied with by Plaintiff? . . ."

The plaintiff did not attempt to enforce the collection of its commission against anyone except Jane Sullivan, who had agreed to pay it under the express terms of the broker's employment contract. Whether she had authority from the estate or was the owner of the property had no effect on her bargain, individually, to pay the plaintiff's commission. The property was sold and Jane Sullivan could not avoid paying the commission, her part of the bargain.

The defendant argues that Jane Sullivan did not participate individually in the sale of the listed property; that this was solely an act of the Roger Sullivan estate.

This contention is completely immaterial to the disposition of the case. The broker's contract provided that the commission was to be paid to the plaintiff, whether the property was sold by Jane Sullivan *or any other person* (Italics ours), during the term of the listing.

The defendant contends the listing was void for lack of legal description of the property; that the description was on a separate sheet which made no reference to the broker's contract; and that it had been prepared after the execution of the contract. Upon disputed evidence the trial court resolved this factual issue in favor of the plaintiff, which is binding on this court, by finding the description was a part of the original contract. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn. (2d) 570, 343 P. (2d) 183 (1959).

The defendant contends the plaintiff violated the duty owed to its principal by failing to make a reasonable effort to sell the property. The record supports the trial judge's holding to the contrary. He stated in his memorandum decision that Alfred Jansen, the plaintiff's president, had advertised the property for sale; that he had talked to at least 20 persons who had inquired about the property; and that one of plaintiff's salesmen had made at least five trips to the property to show it to prospective purchasers.

The defendant contends the broker's contract was inconsistent and ambiguous; that, in determining the intent of the parties, it should be construed against the plaintiff, the drafter of the contract.

The inconsistencies referred to relate to the ownership of the property and the ability of Jane Sullivan to furnish a good title. Furnishing title is immaterial and not an issue in this case because Jane Sullivan was not called upon to furnish title.

The defendant finally contends the trial court erred in admitting, over the objection of the defendant, the testimony of Alfred Jansen relative to transactions with the deceased; that the testimony was in violation of the dead man's statute, RCW 5.60.030.

At the close of the trial, the record disclosed the following statements of counsel for the parties:

"Mr. SIMPSON [Counsel for defendant]: May I say now that the case is in I don't know as there is too much that is prejudicial to each side as far as the dead man's statute is concerned. Mr. JONES [Counsel for plaintiff]: I am willing to definitely waive that. Mr. SIMPSON: I didn't know what would be forthcoming in the way of testimony so I couldn't yield at the outset of the lawsuit *but I am prepared to concede in open court that she signed those listings, that that is her signature, and I think that is probably the only real element of any transaction that is involved that could approach the dead man's statute. The rest of what happened is just a recital not from a transaction with her so much but what it was.* There is probably some element of it but basically we can't dispute but what she signed that. I would be humbugging the Court to say that was not her signature. Our point has been directed to the fact that it was an in-

complete listing under the law and the arguments in that direction." (Italics ours.)

■ The trial court made no further comment relative to the application of the dead man's statute. It apparently considered that the foregoing statement of defendant's counsel constituted a complete waiver of the statute. We are satisfied the statute was waived by this statement in the absence of a preservation of his objection to specific testimony. If the defendant's counsel had intended to preserve any part of his objection, he should have so advised the trial court.

The judgment is affirmed.

OTT, C. J., HILL and HALE, JJ., and MURRAY, J. Pro Tem., concur.