[No. 39486.    Department Two.    April 17, 1969.]

ARTIS BAYLOR, as *Executrix, et al., Appellants,* v. THE MU-
NICIPALITY OF METROPOLITAN SEATTLE, *Respondent.**

*Gale P. Hilyer, Jr.,* for appellant.

*Murray, Dunham & Waitt,* by *Robert J. Hall,* for respondent.

HILL, J.—Two contiguous property owners (hereinafter referred to as Baylor and Rogers) were greatly distressed at the condition in which their properties were left after the installation of a sewer by the Municipality of Metropolitan Seattle, King County, Washington (hereinafter referred to as Metro). They commenced consolidated actions in July of 1965; Baylor asking for $15,000 and Rogers asking for $25,000 as the damages to their respective properties. These were in the nature of eminent domain actions

*Reported in 453 P.2d 829.

for the damaging of their respective properties for a public purpose.

By trial amendments filed June 24, 1966 (just a few days before trial), the plaintiffs each brought into the case a new cause of action based on a breach of written utility easements between the property owners and Metro together with damages for acts of trespass beyond the easements granted.

The Baylor trial amendment prayed for a money judgment in the sum of $25,050 plus additional continuing damages and "[i]n the alternative such other and different judgment in law and in equity as will give to the plaintiffs all of the rights as provided in the subject contract [the easement agreement] and which will be meet and just in the premises."

The Rogers trial amendment prayed for a money judgment in the sum of $40,175 (plus additional continuing damages), and with the alternative prayer[1] quoted in the preceding paragraph.

Metro answered, denying liability, but making B. D. & H., Inc., a Washington corporation (hereinafter BD & H), which had installed the sewer, a third-party defendant, and asking for a judgment over against it for any judgment which might be recovered against Metro.

The trial began on June 29, 1966, and was completed July 8, 1966. The trial court signed and filed extensive findings of fact and conclusions of law on October 3, 1966. The findings of fact are not challenged, indeed it is stipulated that the only issue on the appeal is whether the proper conclusions of law were drawn from the facts as found by the trial court.

The trial court found the property owners had given written easements[2] to Metro: a permanent easement 15

---

[1] One word omitted.

[2] The written easements are not before this court; neither is any of the testimony nor exhibits. The statements herein came from the trial court's findings which are unchallenged and, therefore, are to be accepted as verities. *Thorndike v. Hesperian Orchards, Inc.,* 54 Wn.2d 570, 343 P.2d 183 (1959).

feet in width for a sewer line, and a temporary easement 75 feet in width to be used during the installation of the sewer line. Metro ·was to remove all debris and restore the surface of the property as nearly as possible to the condition in which it existed at the date of the agreements. By the terms of the easements, Metro was to have the responsibility for 1 year after the completion of the trench and excavation to restore the surface of said property to a level which existed at the ·time of the commencement of the excavation.

The trial·court further found. that Metro, through BD & H, completed the trench excavation and initial restoration on Rogers' property on October 18, 1965, and on the Baylor property on October 15, 1965 and, therefore, had until and through October 18, 1966, to restore the surface of Rogers' property, and until ·and· through October 15, 1966, to restore the surface on the Baylor property.

Separate judgments in favor of Baylor and Rogers were signed and filed on October 7, 1966.

Money judgments were awarded to each of the property owners as to certain items of damages claimed; however, the Rogers judgment required Metro

> to strip off one foot of the present soil, within 25 feet on each side of the center line of the permanent easement on the plaintiffs' property, and place thereon two feet of peat-silt type soil similar to the original soil, so that the total 50-foot strip will be one foot above the level of the ground adjoining it.
>
> In the alternative, at the election and option of the Municipality of Metropolitan Seattle, it may, in lieu of performing said restoration work, pay the plaintiffs the sum of $1,065.00. That the Municipality of Metropolitan Seattle shall have until October 18, 1966 to complete said restoration work, and shall have the right to go over the property of either plaintiff, to work on either parcel of property.

And it further required Metro, "to clean up rocks and debris within a distance of 75 feet from each side of the center line of said right-of-way on the plaintiff's property, and that such work shall be accomplished prior to October

18, 1966." And it also required Metro "to mark the center line of the right-of-way."

The Baylor judgment was identical with the Rogers judgment in the portions quoted except that the alternate money judgment was in the sum of $1,235 and the date, by which the work was to be done, was October 15, 1966.

From these judgments the property owners appeal.

As we understand their objections (this appeal was submitted on the briefs and without oral argument), they contend that the trial court had no right or authority to enter those portions of the judgments which gave Metro the opportunity to re-enter upon the property, remove the topsoil placed there by Metro's contractor, and replace it with topsoil of the character contemplated by the easement agreements; and that there is also objection to that part of the separate judgments requiring Metro to go back on the premises and clean up the rocks and debris within a distance of 75 feet on each side of the center line—all such work to be accomplished by October 18, 1966, on the Rogers property, and by October 15, 1966 on the Baylor property.

■ The gist of the appellants' argument is that they brought actions for damages, and that was what they were entitled to have, and that the trial court had no right or authority to give Metro an opportunity to specifically perform its easement agreements even within the time still remaining under such agreements.

The appellants cannot ignore their own trial amendments, introducing their claims for breach of the written easement agreements and their prayer for "such other and different judgment in law and in equity as will give to the plaintiffs all the rights as provided in the subject contract which will be meet and just in the premises."

Inasmuch as of the date the judgments were entered Metro still had time to put the surface of the property covered by the easements into the condition contemplated by the easement agreements, the trial court—in its consideration of what was "meet and just in the premises"—

directed Metro to do what its contracts required it to do, or to pay the amounts which the trial court found would be the cost of doing that work.

Metro immediately elected to perform its contracts within the time limits indicated by the court in its judgments rather than pay the alternate money judgments.

This appeal is here without any statement of facts and with no challenge as to any findings of fact made by the trial court. The sole issue is whether the findings of fact support the judgments entered.

The plaintiffs-appellants argue that these were, in essence, eminent domain actions—that they asked compensation for the damaging of their property and that the trial court converted them into equitable actions and granted specific performance of the easement agreements. The appellants insist that all they wanted was damages and that they did not ask for and were not interested in equitable relief.

The answer is that the appellants prayed in the alternative for equitable relief and that is exactly what the trial court granted, requiring Metro to restore the premises to the conditions required by the written easements within the period stipulated by the easements, or to pay the cost as found by the trial court of doing such work.

The trial court drew proper conclusions of law from the facts, as found by it, and the judgments appealed from are affirmed.

We hold that when the trial court entered its judgments of October 7, 1966, the judgments were a proper determination of the remedies to which the parties were entitled; and the basis on which the appeal was taken was without merit.

It is, of course, futile to affirm judgments that required certain actions to be taken by October 15th and 18th, 1966. The parties by their own stipulations and agreements have doubtless determined what the consequences should be in the event of our approval of the judgments entered on October 7, 1966, from which the plaintiffs appealed.

We remand the cause to the Superior Court for King County for the entry of such orders or decrees as may be

necessary in the circumstances. Costs will be taxed as though this were an affirmance.

HUNTER, C. J., ROSELLINI and HALE, JJ., and ARMSTRONG, J. Pro Tem., concur.