[No. 7-40066-2.    Division Two.    September 23, 1969.]

JAMES MANUFACTURING COMPANY, *Plaintiff,* v. JOHN STOVNER, *Appellant,* EDWARD E. KINDELL, JR., *et al.,* *Respondents.*

*Duane S. Radliff,* for appellant.

*Edward Eugene Kindell,* pro se.

ARMSTRONG, C. J.—This is an appeal by the defendant John Stovner from a judgment in his favor for damages for breach of contract in the sum of $960. This judgment was allowed on his cross-complaint against third-party defendants Edward E. Kindell, Jr., Edward E. Kindell, Sr., and Theresa Kindell. Defendant contends that the trial court applied the wrong measure of damages and that his recovery should have been for the full contract price.

This action originated in a suit by plaintiff, James Manu-

facturing Company, against defendant Stovner for misrepresentations in relation to a conditional sales contract which defendant assigned to plaintiff. Defendant Stovner, as seller under the conditional sales contract, joined the buyers as third-party defendants, and cross-complained for damages. For convenience, defendant Stovner will be referred to as seller and third-party defendants Kindell will be referred to as buyers.

The trial court, in the first trial, entered a judgment for plaintiff against defendant seller in the amount of $3,836.80. The court also found that the seller was entitled to damages against the buyers, but awarded a new trial on the cross-complaint "confined solely to the issue of damages to be taxed against third party defendants in favor of defendant as the natural and proximate result of third-party defendants' breach of contract . . ." The judgment in the first trial was not appealed by any party. The plaintiff, James Manufacturing Company, is not a party to this appeal.

The case was set for trial, but one of the buyers wrote the court that he would be unable to attend because he was out of the state. The presiding judge continued the cause for trial to May 6, 1966. The court mailed a letter advising the buyers of this date and that their attorney had withdrawn from the case. The buyers failed to appear on May 6, 1966 and default judgment in the sum of $3,836.80 was entered against them. The default judgment was set aside on motion of the buyers.

The issue of damages was retried before a different trial judge and damages in the sum of $960 together with $600 as reasonable attorney's fees plus costs was awarded to the seller against buyers. Seller now appeals the measure and amount of this judgment and the order vacating the default judgment.

A motion to vacate a default judgment is addressed to the discretion of the trial court, and its disposition will not be disturbed on appeal unless it plainly appears that there is an abuse of discretion. *White v. Holm,* 73 Wn.2d 348, 438 P.2d 581 (1968). We find no abuse of discretion

in this instance because buyers were without counsel and one of the buyers stated that they never received the letter resetting the case for trial.

The principal question raised by this appeal is whether or not the trial judge selected the proper measure of damages.

On May 2, 1960, Edward Eugene Kindell, one of the buyers, signed a written conditional sales contract with seller which involved the purchase of dairy farm equipment consisting of a 4-unit pipeline milker and 20 stalls and columns. The installation costs were included in the contract price of $3,628.53. The equipment was to be installed in a barn in the process of construction at the time of the execution of the contract. Edward Eugene Kindell is the son of the other buyers and was 27 years of age at the time of the signing of the contract.

The court, in the first trial, found that the buyers were operating a dairy farm as copartners and that the son executed the contract as agent for the partnership. The barn was not ready for the installation of the milking equipment in the summer of 1960. The stanchions, stalls and columns were delivered to buyers but were not installed. The court found that the seller was at all times ready, able and willing to install the equipment delivered, and deliver and install the 4-unit pipeline milker, but buyers wrongfully prevented installation of the equipment and breached their contract.

The second trial was confined solely to the issue of damages between seller and buyers. As a measure of damages, seller sought to recover the $3,628.53 contract price of all the equipment. The court found, however, that the dairy farm equipment was readily divided into two component parts: the panel stalls and columns which had a value of $1,260 and the 4-unit pipeline milker which had a value of $2,368. The court deducted the $300 cost of installing the panels and stalls and awarded damages of $960 for this item. The trial court refused to award any damages for the 4-unit pipeline milker because it was still in the possession of the

seller. He further found that the milker had a market value equal to the contract price at the time of the breach by the buyer. The court found that by the exercise of reasonable care and prudence the milker could have been sold at no loss to seller.

In reaching this conclusion the trial court applied the principles of the following provision of the Uniform Sales Act, now repealed by the Uniform Commercial Code:

*Action for damages for nonacceptance of the goods.* (1) Where the buyer wrongfully neglects or refuses to accept and pay for the goods, the seller may maintain an action against him for damages for nonacceptance.

(2) The measure of damages is the estimated loss directly and naturally resulting, in the ordinary course of events, from the buyer's breach of contract.

(3) Where there is an available market for the goods in question, the measure of damages is, in the absence of special circumstances showing proximate damage of a greater amount, the difference between the contract price and the market or current price at the time or times when the goods ought to have been accepted, or, if no time was fixed for acceptance, then at the time of the refusal to accept.

RCW 63.04.650.

Seller contends, however, that the court should have applied another provision of the Uniform Sales Act, namely:

*Action for the price.*  . . .

(2) Where, under a contract to sell or a sale, the price is payable on a day certain, irrespective of delivery or of transfer of title, and the buyer wrongfully neglects or refuses to pay such price, the seller may maintain an action for the price, although the property in the goods has not passed, and the goods have not been appropriated to the contract. But it shall be a defense to such an action that the seller at any time before judgment in such action has manifested an inability to perform the contract or the sale on his part or an intention not to perform it.

RCW 63.04.640(2). Application of this remedy would have given the seller the full contract price even though he retained the milker and had an available market for its resale.

We then arrive at this issue. If the buyer wrongfully refuses to accept and pay for the goods, may the seller recover the contract price if he has an available market to dispose of the goods without loss?

■ The seller's contention would put that construction upon the Uniform Sales Act. The trial court rejected that contention on the grounds that it would be "unconscionable." We agree.

There were some cases in point prior to the enactment of the Uniform Sales Act, a few in point in other jurisdictions after its enactment and no cases directly in point in this jurisdiction.

Prior to the enactment of the Uniform Sales Act there were conflicting decisions on what remedy the seller had when the buyer refused to accept and pay for goods as contracted. One view held that the seller was entitled to the full contract price regardless of the resalability of the goods in his possession. In another view, the seller was restricted to the difference between the contract price and the value of the goods without regard to their marketability.

Both views were harsh and inequitable in certain circumstances. Some jurisdictions had adopted a middle view which we believe was incorporated into the Uniform Sales Act. That view held that the seller could recover the contract price only if the following facts concur: (1) The goods cannot be readily resold for a reasonable price; and (2) further labor or expense of material are not necessary on the part of the seller to enable him to fulfill his obligations under the contract. *See* L. Vold, Law of Sales, 218, 219 (1959); 3 S. Williston, Sales §§ 560c, 564 (rev. ed. 1948, Supp. 1969).

Under this rule the buyer has the benefit of being liable for no more than the actual loss which occurred. This is measured by the difference between the contract price and the market value at the time the goods should have been accepted. *See* RCW 63.04.650(3), *supra.* The rule advocated by the seller would permit a seller to "have his cake and eat it."

The trial court was correct in applying this measure of damages if there was substantial evidence that the milker had a reasonable market value equivalent to the contract price at the time of the breach of contract by buyer. Seller challenges the trial court's findings in this regard, requiring our review of the evidence.

The testimony in the case was conflicting, but there was substantial evidence that the 4-unit pipeline milker could have been sold to another farmer in the summer of 1960 for the price charged the buyer. Kenneth E. Thompson, a salesman for a competing line of milking equipment, testified for the buyer that in the summer of 1960 or 1961, the 4-unit pipeline milker could have been sold for $2,200 or $2,300. At a later point in his testimony he stated that it could have been readily sold in the summer of 1960 for its original component value. Seller testified that he still had the pipeline milker, but it could have been sold. He stated that it was worth $2,368 at the time of the sale.

Admittedly there are statements in the testimony of a lower estimation of value of the pipeline milker. The trial court could have awarded some damages for the breach of contract as to this portion of the sale of milking equipment. Even if we were to agree with the seller that damages should have been awarded for the breach of contract for the sale of the portion of the contract relating to the 4-unit pipeline milker, we could not substitute our findings for those of the trial court because its findings were based upon substantial evidence. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

The judgment of the trial court is affirmed.

PEARSON and PETRIE, JJ., concur.