[No. 853-1.   Division One—Panel 2.   February 29, 1972.]

PEGGY ANN GANSON, *Respondent,* v. F.J.C., INC., *Appellant.*

*Riddell, Williams, Voorhees, Ivie & Bullitt,* for appellant.
*Rosellini & Rosellini,* for respondent.

FARRIS, A.C.J.—F.J.C., Inc., a real estate firm and em-

ployer of Mrs. Ganson appeals from a judgment awarding Mrs. Ganson $12,112.50 (less credit for advances of $241.70) as her portion of a sales commission on a parcel of real property listed for sale by her with F.J.C., Inc., and purchased by F.J.C., Inc.

It is not disputed that Mrs. Ganson participated in the sale of the parcel, but the role of her participation and the motivation for her acts are in dispute. Her employment contract provided for the percentage of the real estate commission to be paid to Mrs. Ganson in the event of a sale by her to a third party. Certain language in that agreement also pertained to the purchase of property by the salesman or by the salesman and broker jointly, but there was no specific language regarding the amount of the commission which she would receive should the broker purchase property. The written earnest money agreement for the property purchased here stated with regard to the commission "purchaser to pay per separate agreement."

The appeal raises two questions: (1) Was there a contract to pay Mrs. Ganson a selling commission on the purchase transaction and, if so, did Mrs. Ganson perform. (2) Even if there was a contract and performance by Mrs. Ganson sufficient otherwise to justify recovery of a commission, was the contract void as barred by the statute of frauds, RCW 19.36.010(5).

The first question is one of fact. The trial court found that Mrs. Ganson, a duly authorized and licensed real-estate saleswoman employed by the defendant, obtained an exclusive authorization to sell the real estate in question and that she communicated an offer to the seller and negotiated the sale on behalf of the defendant purchaser. The trial court found further that:

[T]he efforts of Peggy Ganson were substantially the same in the negotiation of this sale as they would have been in dealing with a complete stranger.

Finding 12. Though disputed, there is substantial evidence in the record to support these findings of fact. They will not be disturbed on appeal. *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959).

■ On the basis of competent testimony, the trial court concluded that the seller, Mr. Taschner, and the purchaser, F.J.C., Inc., agreed upon a reduction of $28,500 in the sales price in return for F.J.C., Inc.'s assuming the obligation to pay the commission on the sale. The trial court found that this commission was in fact paid to F.J.C., Inc., by means of the reduced sales price. Therefore, the action was not one to collect a sales commission which would require a written agreement, but rather an action for the recovery of funds already collected by the real estate broker as a commission on a sale effected by Mrs. Ganson and due to her. This determination, based upon substantial evidence in the record, resolved the question of whether Mrs. Ganson's claim was barred by the statute of frauds, RCW 19.36.010(5). The finding will not be disturbed on appeal.

The question then is on what basis should the commission be disbursed to Mrs. Ganson. The trial court, relying upon paragraph 5[1] of the employment agreement, found

---

[1]"The usual and customary commissions shall be charged for any service performed hereunder, and the broker shall make every effort to advise the salesman of any special contract relating to any unusual transaction which he undertakes to handle. On any sale made by the salesman, the broker shall receive 50% of the commission earned. The selling salesman is to receive the other 50% of the commission, unless a listing fee is to be paid. Any listing fee is to be paid by the selling salesman. A nonexclusive listing fee is 10% of the commission. An exclusive listing fee is 15%. This means that the selling salesman will receive 50%, 40% or 35% of the gross commission on any transaction dependent upon the applicability of listing fees. In no case shall the broker be liable to the salesman for any commission unless it shall have been collected from the party for whom the service was performed or from whomever agrees to pay the commission.

"In the event that the salesman wishes to buy a property on his own account, it is understood and agreed that the broker shall have the option of joining with the salesman in the purchase of such property. If this option is exercised, broker shall have a 50% interest in such purchase. The salesman shall have the other 50% interest, except for any listing fee that he might have to pay on the property being purchased. However, broker shall have the option of waiving participation with the salesman in such purchase. If broker does so waive, then the salesman may purchase on his own account. If the salesman then completes the purchase, he shall pay broker 50% of the commission in accordance with the Seattle Real Estate Board schedule, and shall also

that Mrs. Ganson was entitled to 42½ per cent of the total sales commission of $28,500, to wit: 7½ per cent (as one-half of the listing fee of 15 per cent since the property was a joint listing) and 35 per cent as the sales commission.

The trial court concluded that paragraph 5 of the employment agreement which defined the commission to be received by the broker in the event that the salesman purchased, applied similarly if the broker purchased.

> Now, interestingly enough, there is no provision in paragraph 5 for what is to be done if the broker buys the property for his own account. What then shall be paid the salesman? Well, it seems to me that the same fifty per cent rule would be fair enough, that if the broker gets fifty per cent, if the salesman buys, that the salesman ought to get his fifty per cent if the broker buys. But, as I say, the contract is silent on that point, so I mention it really only parenthetically.

An agreement authorizing an agent to sell real estate on a commission basis must be in writing. *See Mele v. Cerenzie,* 40 Wn.2d 123, 241 P.2d 669 (1952). RCW 19.36.010(5) provides in part:

> In the following cases, . . . any agreement, contract and promise shall be void, unless such agreement, contract or promise, or some note or memorandum thereof, be in writing, and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized, . . . (5) An agreement authorizing or employing an agent or broker to sell or purchase real estate for compensation or a commission.

█ The earnest money agreement, properly prepared, would have specifically defined the commission to be paid by the seller of the property. We need not consider whether the language "purchaser to pay per separate agreement" was sufficient to satisfy the statute of frauds since the trial court, upon competent evidence, found that a commission of $28,500 was in fact paid. Having already

---

pay whatever listing fee is applicable to the sale. If the salesman purchases the property on a net basis with the commission deducted from the sales price, the commission to the broker and the listing fee shall be computed on the gross price."

received the commission, F.J.C., Inc. cannot now assert the statute of frauds as a defense to its disbursement to the salesman. In the contest here between a saleswoman for her earned share of a fee that has already been paid by the seller to her broker, the written employment contract which defines the percentage of that commission due the saleswoman controls.

Paragraph 5 of Mrs. Ganson's contract of employment satisfied this requirement:

> On any sale made by the salesman, the broker shall receive 50% of the commission earned. The selling salesman is to receive the other 50% of the commission, unless a listing fee is to be paid. Any listing fee is to be paid by the selling salesman. A nonexclusive listing fee is 10% of the commission. An exclusive listing fee is 15%. This means that the selling salesman will receive 50%, 40%, or 35% of the gross commission on any transaction dependent upon the applicability of listing fees.

The trial court properly enforced that contract.

Affirmed.

JAMES and SWANSON, JJ., concur.