IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| INTERNATIONAL PAPER, | ) | |
| | ) | No. 32075-8-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| ANTHONY BOLTE, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

KORSMO, J. — The jury that heard this industrial insurance appeal sided with the

employer rather than the worker who had prevailed before the Board of Industrial

Insurance Appeals. The injured worker, Anthony Bolte, challenges the trial judge's

failure to direct a verdict in his favor as well as the sufficiency of the evidence to support

the verdict. Because the evidence permitted the jury to resolve the case as it did, we

affirm.

FACTS

Mr. Bolte began working for International Paper (formerly Weyerhaeuser), in

August 2006. International Paper is a self-insured employer. The following year he

suffered an inguinal[1] hernia on the right side; the injury was not related to his employment. He underwent surgery to insert a mesh patch to repair the hernia and missed six weeks of work. He returned to work at nearly full capacity and resumed his normal outdoor activities.

Prior to the October 1, 2008 injury at issue in this case, Mr. Bolte had some work attendance issues. International has a point-based disciplinary system for attendance. If an employee for any reason is absent for half a day (four hours) or more, that absence results in one point on the employee's record. Three points result in a verbal warning to the employee; four points—a written warning; five points result in a three-day suspension without pay and finally six points result in the employee's termination. At the end of each year, an employee with two or fewer points will have his record reset to zero points. An employee can also have points removed by working for a certain amount of days without an absence. Due to his own illnesses and his son's illness, Mr. Bolte was at the written warning stage of the disciplinary system.

On October 1, 2008, Mr. Bolte was driving a forklift as part of his regular job activities. He turned around to back up the forklift and felt pain in the location of his former hernia. He left work after only two hours on the job and received another absence point. The following day he saw Dr. Richard Edgerly, who wrote a note excusing Mr.

---

[1] Groin area.

Bolte from work for the next two days.[2]  He was also referred to Dr. Manuel Lozano, the surgeon who had performed the 2007 hernia repair surgery.

On October 13, 2008, Mr. Bolte again left work, but this time reported groin pain. Because he had already worked five hours that shift, no absence points were assessed against him.  This was the first time the supervisor, Mr. Mee, had learned that Mr. Bolte was suffering groin pain.

Toward the end of October, Mr. Bolte visited the company's safety coordinator, Cammie McGrath, to discuss FMLA paperwork.  He was hoping to reverse some of his disciplinary points accumulated during prior absences related to his son's illness and his earlier illnesses.

On November 6, 2008, Mr. Bolte saw Dr. Lozano as the result of the earlier referral from Dr. Edgerly.  Dr. Lozano concluded that the pain Mr. Bolte was experiencing was unrelated to the prior hernia surgery.  Mr. Bolte then returned to Dr. Edgerly and, eventually, completed the appropriate Department of Labor and Industries (DLI) paperwork for a self-insured employer.  Mr. Bolte did not return to work after his appointment with Dr. Lozano until February 25, 2010.[3]

---

[2]  An extended absence counts as one point.

[3]  Mr. Bolte conceded that he would have received a three day suspension without pay, based on his accumulated absences, if he had returned to work after missing the day to see Dr. Lozano.

Mr. Bolte filed a claim for worker's compensation benefits based on the October 1

injury. The claim was allowed and International Paper promptly contested it. DLI

affirmed its order allowing the claim and International Paper appealed to the Board of

Industrial Insurance Appeals. An industrial appeals judge issued a proposed order

affirming DLI, and the full Board subsequently adopted that order. International Paper

appealed to Yakima County Superior Court.

There the matter proceeded to trial before a six person jury. The jury received

deposition testimony from Dr. Lozano. The doctor could not determine the cause of the

pain suffered in October 2008. While he initially suspected a strained muscle in the

inguinal region, he thought it also could be neurodynia, an irritation of the nerve in the

area of the mesh repair patch.[4] However, he could not say whether or not Mr. Bolte had

neurodynia.

After the testimony of Dr. Lozano and Mr. Jeffrey Mee, International Paper rested

its case. Mr. Bolte moved for a directed verdict. The trial judge denied the motion,

reasoning that the evidence allowed the jury to conclude that there could be another cause

for the injury and that Mr. Bolte had a motive to lie because of the disciplinary process he

was facing.

---

[4] A nerve block procedure, which should relieve pain from neurodynia, was performed in November 2009. The procedure did not relieve the pain; instead, the problem worsened.

Dr. Adrian Heap testified for Mr. Bolte and opined that Mr. Bolte suffered from neurodynia that had been caused by the October 1 twisting injury. He also believed that the original 2007 hernia had been the result of an unreported industrial injury. The issue for the jury to resolve, then, was whether his current injury was caused by his employment reawakening[5] his former problem or if the condition flared up on its own. Despite the medical testimony, the jury unanimously returned its verdict in favor of International Paper. Mr. Bolte then timely appealed to this court.

### ANALYSIS

Mr. Bolte's appeal raises two contentions. He argues that the trial judge erred in denying his request for a directed verdict and that the evidence did not support the jury's verdict. Because the two issues concern the state of the evidence at trial, we will address them together.

The trial court should grant a motion for a directed verdict under CR 50 when "viewing the evidence and all inferences in a light most favorable to the nonmoving party, substantial evidence does not exist to support the nonmoving party's claims." *Joy v. Dep't of Labor & Indus.*, 170 Wn. App. 614, 619, 285 P.3d 187 (2012). "Substantial

---

[5] In workers' compensation parlance, this is known as the "light up" doctrine. *E.g.*, *Harbor Plywood Corp. v. Dep't Labor & Indus.*, 48 Wn.2d 553, 556, 295 P.2d 310 (1956).

evidence is the quantum of evidence sufficient to persuade a rational, fair-minded person the premise is true." *Id.* This court conducts de novo review of motions for judgment as a matter of law. *Id.*

The substantial evidence standard is also at issue in appellate review of a challenge to the sufficiency of the evidence. Unlike other administrative appeals to this court, by statute workers' compensation cases are reviewed "as in other civil cases." RCW 51.52.140. On review in superior court, no new evidence is presented and the case is heard de novo. RCW 51.52.115. Nonetheless, "the findings and decision of the board shall be prima facie correct and the burden of proof shall be upon the party attacking the same." *Id.* This means that the superior court can overturn the Board ruling only after determining from a "preponderance of credible evidence" that the Board's "findings and decision are incorrect." *Ruse v. Dep't of Labor & Indus.*, 138 Wn.2d 1, 5, 977 P.2d 570 (1999) (internal quotations and citation omitted). In all cases, an appellate court cannot substitute its view of the evidence for that of the trier of fact. *E.g.*, *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 575, 343 P.2d 183 (1959).

With these standards in mind, we turn to Mr. Bolte's contentions. His motion for directed verdict should have been granted if the record lacked substantial evidence to show that the Board's ruling was incorrect. He argues that the court erred in denying the motion because International Paper failed to provide medical evidence establishing that

his condition was not caused by the October 1 twisting. Appellant's Br. at 14. This misstatement of International Paper's burden undergirds his entire appellate argument. The proper question is not whether International Paper could prove the cause of Mr. Bolte's condition, but whether it had sufficient evidence that the Board's decision was wrong.

As the trial court reasoned, the evidence did allow the jury to conclude that some other cause was at work here than the purported twisting injury of October 1. Dr. Lozano had testified that he did not think the turning would result in the unusual strain reported by Mr. Bolte. Mr. Mee explained Mr. Bolte's tenuous position due to attendance problems; this provided a motive for fabricating a claim. There also was evidence that Mr. Bolte had resumed strenuous leisure activities and returned from the hernia surgery to full-time work for a period of time. The totality of this evidence permitted the jury to determine that the October 1 incident was not the cause of Mr. Bolte's current injury, if it even believed he was injured at that time or not. Viewing the evidence in a light most favorable to International Paper, as the trial court had to do with a CR 50 motion, there was evidence in the record to permit the jury to conclude that the Board was wrong. The court did not err by denying Mr. Bolte's motion.

For similar reasons, the challenge to the sufficiency of the evidence fails. International Paper was not required to provide medical proof of the cause of the condition. It was sufficient for it to simply show that there could be a different cause than that found by the Board. Once again, the testimony of Dr. Lozano is critical. Although Dr. Heap found that there was neurodynia, Dr. Lozano was uncertain. Based on this conflict in the evidence, the jury was free to find that the Board erred in determining that there was an injury. Dr. Lozano also opined that the twisting injury might not have caused the strain that Mr. Bolte reported. Dr. Heap testified that the neurodynia may well have resulted from the 2007 hernia repair rather than the twisting incident (although he attributed the hernia itself to an unreported workplace injury). Thus, the testimony of both doctors also allowed the jury to decide that Mr. Bolte's injury was not proximately caused by the October 1 incident.

For both reasons—there was a conflict in the testimony concerning what injury Mr. Bolte may have suffered, as well as the cause of any injury—there was substantial evidence to support the jury's verdict. Even when starting from a favorable position such as that created by RCW 51.52.115, a party in a de novo trial is free to attack the sufficiency of the evidence to support the original ruling rather than try to establish the actual cause of injury. Accordingly, a jury is free to reach a different decision than that reached by the original tribunal either by reweighing the evidence or by believing

8

different evidence than that found credible in the initial action. This court, however, does not have those luxuries and cannot substitute its view of the case for that of the jury.

Affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Korsmo, J.

WE CONCUR:

Brown, A.C.J.

Fearing, J.